# Attachment

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|
| **AUGUST 2011**    **002546** |
| E-Filing Number: 1108023763 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| VERONICA MARTINEZ | WOLTERS KLUWER HEALTH, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| P.O. BOX 1088 ALCALDE NM 87511 | 116 PINE STREET, SUITE 320 CT CORPORATION SYSTEM HARRISBURG PA 17101 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| APRIL MONTOYA | WOLTERS KLUWER UNITED STATES, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| P.O. BOX 1088 ALCALDE NM 87511 | 116 PINE STREET, SUITE 320 CT CORPORATION SYSTEM HARRISBURG PA 17101 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| APRIL MONTOYA | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| P.O. BOX 1088 ALCALDE NM 87511 | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 3 | 2 | ☐ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☒ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☒ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 2P - PRODUCT LIABILITY |

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | FILED PRO PROTHY AUG 15 2011 S. GARRETT | IS CASE SUBJECT TO COORDINATION ORDER? YES      NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: VERONICA MARTINEZ , APRIL MONTOYA , APRIL MONTOYA

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| ROSEMARY PINTO | 1604 LOCUST STREET 2R PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)546-2604 | (215)546-9904 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 53114 | Rpinto@feldmanpinto.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *ROSEMARY PINTO* | Monday, August 15, 2011, 05:30 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

Rosemary Pinto, Esq.
Pa. Bar No. 53114
RPinto@feldmanpinto.com
**FELDMAN & PINTO**
1604 Locus St, FL 2R
Philadelphia, PA 19103
Telephone: 215- 546-4385

David P. Matthews, Esq.
PA. Bar No. 307961
dmatthews@thematthewslawfirm.com
**MATTHEWS & ASSOCIATES**
2905 Sackett St.
Houston, Texas 77098
(713) 520-5202 Telephone
(713) 535-7133 Facsimile

Richard A. Freese, Esq.
rich@freeseandgoss.com
**FREESE & GOSS, PLLC**
2031 2nd Avenue North
Birmingham, AL 35203
(205)871-4144 Telephone
(205)871-4104 Facsimile
Attorneys for Plaintiff

Filed and Attested by
PROTHONOTARY
15 AUG 2011 05:30 pm
S. GARRETT

This is Not An Arbitration Case. An Assessment of Damages Is Required

| | | |
|---|---|---|
| VERONICA MARTINEZ, a minor by, APRIL MONTOYA, Guardian, and APRIL MONTOYA, Individually<br>P.O. Box 1088<br>Alcalde, NM 87511<br>    Plaintiff, | ) ) ) ) ) ) ) ) ) | COURT OF COMMON PLEAS<br><br>TRIAL DIVISION<br>PHILADELPHIA COUNTY<br><br>_____ TERM, 2011<br>NO. _____ |
| WOLTERS KLUWER HEALTH, INC., et al.<br>    Defendants. | ) ) ) ) | IN RE ZOLOFT<br>JURY TRIAL DEMANDED |

## PRAECIPE TO ISSUE WRIT OF SUMMONS

TO THE PROTHONOTARY:

Kindly Issue a Writ of Summons in the above captioned matter.

FELDMAN & PINTO

_/s/ Rosemary Pinto_____
Rosemary Pinto
Attorney for Plaintiff (s)

1

C.P.97

# 𝕮𝖔𝖒𝖒𝖔𝖓𝖜𝖊𝖆𝖑𝖙𝖍 𝖔𝖋 𝕻𝖊𝖓𝖓𝖘𝖞𝖑𝖛𝖆𝖓𝖎𝖆

## CITY AND COUNTY OF PHILADELPHIA

SUMMONS
*CITACION*

VERONICA MARTINEZ, a minor by APRIL
MONTOYA, Guardian, and APRIL
MONTOYA, Individually

COURT OF COMMON PLEAS

_____ Term, 20 __11__

No. _____

*vs.*

WOLTERS KLUWER HEALTH, INC.
WOLTERS KLUWER UNITED STATES,
INC.

To[1]

WOLTERS KLUWER HELATH, INC.
CT Corporation System
116 Pine Street, Suite 320
Harrisburg, PA 17101

WOLTERS KLUWER UNITED
STATES, INC.
CT Corporation System
116 Pine Street, Suite 320
Harrisburg, PA 17101

You are notified that the Plaintiff[2]
*Usted esta avisado que el demandante[2]*

VERONICA MARTINEZ, a minor by APRIL MONTOYA,
Guardian, and APRIL MONTOYA, Individually

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



JOSEPH H. EVERS
*Prothonotary*



By _____

Date _____

(1) Name(s) of Defendant(s)
(2) Name(s) of Plaintiff(s)

10-208 (Rev. 6/00)

Case ID: 110802546

COURT OF COMMON PLEAS

_____ Term, 20 11 __ No. _____

VERONICA MARTINEZ, a minor by APRIL
MONTOYA, Guardian, and APRIL MONTOYA,
Individually

vs.

WOLTERS KLUWER HEALTH, INC.
WOLTERS KLUWER UNITED STATES, INC.

SUMMONS

Case ID: 110802546

# Office of the Sheriff



William T. Tully
Solicitor

Filed and Attested by
PROTHONOTARY
29 AUG 2011 12:29 pm
Jack Longnan
Chief Deputy

Michael W. Rinehart
Assistant Chief Deputy

Dauphin County
101 Market Street
Harrisburg, Pennsylvania 17101-2079
ph: (717) 780-6590 fax: (717) 255-2889

Jack Lotwick
Sheriff

**Commonwealth of Pennsylvania**      :      VERONICA MARTINEZ, ET AL
                                              VS

**County of Dauphin**                  :      WOLTERS KLUWER HEALTH INC.

Sheriff's Return
No. 2011-T-3253
OTHER COUNTY NO. 110802546

And now: AUGUST 22, 2011 at 11:20:00 AM served the within WRIT OF SUMMONS upon

WOLTERS KLUWER UNITED STATES INC. by personally handing to BOB SERSCH 1 true

attested copy of the original WRIT OF SUMMONS and making known to him/her the contents thereof

at C/O CT CORP 116 PINE STREET SUITE 320 HBG PA 17101

CORPORATE OPERATIONS SPECIALIST

Sworn and subscribed to
before me this 24TH day of August, 2011

So Answers,

*J R Lotwick*

Sheriff of Dauphin County, Pa.

By *Darin Sherfey*

Deputy Sheriff

Deputy: DARIN S SHERFEY

Sheriff's Costs: $60.5 8/19/2011

**COMMONWEALTH OF PENNSYLVANIA**

NOTARIAL SEAL
Karen M. Hoffman, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires August 17, 2014

Case ID: 110802546

# ⚙ffice of the Sheriff



William T. Tully
*Solicitor*

Filed and Attested by
PROTHONOTARY
29 AUG 2011 12:29 pm
Jack Dugman
*Chief Deputy*

Dauphin County
101 Market Street
Harrisburg, Pennsylvania 17101-2079
ph: (717) 780-6590 fax: (717) 255-2889

Michael W. Rinehart
*Assistant Chief Deputy*

Jack Lotwick
*Sheriff*

**Commonwealth of Pennsylvania**          :     VERONICA MARTINEZ, ET AL
                                                          VS

**County of Dauphin**                             :     WOLTERS KLUWER HEALTH INC.

Sheriff's Return
No. 2011-T-3253
OTHER COUNTY NO. 110802546

And now: AUGUST 22, 2011  at 11:20:00 AM served the within WRIT OF SUMMONS upon

WOLTERS KLUWER HEALTH INC. by personally handing to   1 true attested copy of the original

WRIT OF SUMMONS  and making known to him/her the contents thereof at C/O CT CORP 116 PINE

STREET SUITE 320 HBG PA 17101

CORPORATE OPERATIONS SPECIALIST

Sworn and subscribed to
before me this  24TH day of August, 2011

So Answers,

Sheriff of Dauphin County, Pa

By

Deputy Sheriff
Deputy: DARIN S SHERFEY
Sheriff's Costs: $60.5 8/19/2011

**COMMONWEALTH OF PENNSYLVANIA**
NOTARIAL SEAL
Karen M. Hoffman, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires August 17, 2014

Case ID: 110802546

**Feldman & Pinto**
By: Rosemary Pinto, Esquire
Attorney ID Number: 53114
1604 Locust Street, 2R
Philadelphia, PA 19103
Office : (215) 546-2604
Facsimile (215) 546-9904
Email: rpinto@feldmanpinto.com



---

| | | |
|---|---|---|
| VERONICA MARTINEZ, a minor by | : | COURT OF COMMON PLEAS |
| APRIL MONTOYA, Guardian and | : | PHILADELPHIA COUNTY |
| APRIL MONTOYA, Individually | : | |
| | : | |
| vs. | : | AUGUST TERM, 2011 |
| | : | |
| WOLTERS KLUWER HEALTH, INC. | : | NO: 002546 |
| WOLTERS KLUWER UNITED STATES, INC. | : | |
| PFIZER, INC. | : | |

## PRAECIPE TO REISSUE WRIT OF SUMMONS
## AND ADD ADDITIONAL DEFENDANT, PFIZER, INC.

TO THE PROTHONOTARY:

Kindly Reissue the Writ of Summons in the above matter for an additional thirty (30) days an add additional Defendant, Pfizer, Inc.

Pfizer, Inc.
CT Corporation System
116 Pine Street, Suite 320
Harrisburg, PA 17101

Feldman & Pinto

By:    /s/ Rosemary Pinto
Rosemary Pinto
Attorney for Plaintiff

Dated: August 29, 2011

C.P.97

# Commonwealth of Pennsylvania

**SUMMONS**
*CITACION*

## CITY AND COUNTY OF PHILADELPHIA

VERONICA MARTINEZ, a minor by APRIL
MONTOYA, Guardian and APRIL
MONTOYA, Individually
P.O. Box 1088
Alcalde, NM 87511

COURT OF COMMON PLEAS

AUGUST                    Term, 20 11

No.   002546

*vs.*

WOLTERS KLUWER HEALTH, INC.,
WOLTERS KLUWER UNITED STATES,
INC., and PFIZER, INC.

*Filed and Attested by*
*PROTHONOTARY*
*29 AUG 2011 12:31 pm*

To(1)

| WOLTERS KLUWER HEALTH, INC. | WOLTERS KLUWER UNITED | PFIZER, INC. |
|---|---|---|
| CT Corporation System | STATES, INC. | CT Corporation System |
| 116 Pine Street, Suite 320 | CT Corporation System | 116 Pine Street, Suite 320 |
| Harrisburg, PA 17101 | 116 Pine Street, Suite 320 | Harrisburg, PA 17101 |
| | Harrisburg, PA 17101 | |

You are notified that the Plaintiff(2)
*Usted esta avisado que el demandante(2)*

VERONICA MARTINEZ, minor by APRIL MONTOYA, Guardian and APRIL MONTOYA, Individually

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



JOSEPH H. EVERS
*Prothonotary*

By _____

Date _____

(1) Name(s) of Defendant(s)
(2) Name(s) of Plaintiff(s)

10-208 (Rev. 6/00)

Case ID: 110802546

COURT OF COMMON PLEAS

AUGUST ___ Term, 20 _11_ No. __002546__

VERONICA MARTINEZ, a minor by APRIL
MONTOYA, Guardian and APRIL MONTOYA,
Individually
P.O. Box 1088
Alcalde, NM 87511

vs.

WOLTERS KLUWER HEALTH, INC., WOLTERS
KLUWER UNITED STATES, INC., and PFIZER,
INC.

SUMMONS

# Office of the Sheriff



William T. Tully
Solicitor

Filed and Attested by
PROTHONOTARY
19 SEP 2011 12:10 pm
E. HAASE
Chief Deputy

Michael W. Rinehart
Assistant Chief Deputy

Dauphin County
101 Market Street
Harrisburg, Pennsylvania 17101-2079
ph: (717) 780-6590 fax: (717) 255-2889

Jack Lotwick
Sheriff

**Commonwealth of Pennsylvania**      :     VERONICA MARTINEZ

                                                                          VS

**County of Dauphin**      :     PFIZER INC.

Sheriff's Return

No. 2011-T-3380

OTHER COUNTY NO. 110802546

And now: SEPTEMBER 7, 2011 at 1:00:00 PM served the within REISSUED WRIT OF

SUMMONS upon PFIZER INC. by personally handing to SANDRA SCHWALM 1 true

attested copy of the original REISSUED WRIT OF SUMMONS and making known to him/her the

contents thereof at C/O CT CORP 116 PINE STREET SUITE 320 HBG PA 17101

CORPORATE OPERATONS SPECIALIST

Sworn and subscribed to
before me this 14TH day of September, 2011

So Answers,

Sheriff of Dauphin County, Pa.

By

Deputy Sheriff

Deputy: DARIN S SHERFEY

Sheriff's Costs: $41.25 9/2/2011

**COMMONWEALTH OF PENNSYLVANIA**

NOTARIAL SEAL
Karen M. Hoffman, Notary Public
City of Harrisburg, Dauphin County
My Commission Expires August 17, 2014

Rosemary Pinto, Esq.
Pa. Bar No. 53114
RPinto@feldmanpinto.com
**FELDMAN & PINTO**
1604 Locus St, FL 2R
Philadelphia, PA 19103
 (215) 546-4385 Telephone

David P. Matthews, Esq.
PA. Bar No. 307961
dmatthews@thematthewslawfirm.com
**MATTHEWS & ASSOCIATES**
2905 Sackett St.
Houston, Texas 77098
(713) 520-5202 Telephone
(713) 535-7133 Facsimile

Richard A. Freese, Esq.
Tim K. Goss, Esq.
PA Bar No. 310980
rich@freeseandgoss.com
goss39587@aol.com
**FREESE & GOSS, PLLC**
2031 2nd Avenue North
Birmingham, AL 35203
(205)871-4144 Telephone
(205)871-4104 Facsimile

Attorneys for Plaintiff

| | | |
|---|---|---|
| **VERONICA MARTINEZ, a minor, by APRIL MONTOYA, Guardian, and APRIL MONTOYA, Individually**<br>**P.O. Box 1088**<br>**Alcalde, NM 87511** | § § § § § § § § | **COURT OF COMMON PLEAS FOR PHILADELPHIA COUNTY, CIVIL DIVISION**<br><br>**August Term, 2011** |
| *Plaintiffs* | § § | **No: 02546** |
| **Vs.** | § § | **COMPLAINT FOR DAMAGES** |
| **WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED STATES, INC., and PFIZER, INC.** | § § § § | **DEMAND FOR A JURY TRIAL** |
| *Defendants.* | | |

- 1 -

Case ID: 110802546

## COMPLAINT

1.      Plaintiff, April Montoya, Individually and as Guardian (hereinafter "Mother Plaintiff") on behalf of Veronica Martinez, a Minor (hereinafter "Infant Plaintiff"), by and through their undersigned counsel, hereby submit this Complaint against Defendants WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED STATES, INC., and PFIZER, INC.

2.      As more specifically pleaded below, each Plaintiff maintains that the pharmaceutical drug ZOLOFT® and/or setraline (hereinafter collectively "Zoloft") is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce and lacked proper warnings as to the dangers associated with its use.

## I.      PLAINTIFFS

3.      Plaintiffs are individuals, or the duly authorized representative of individuals, who, at all times relevant to the allegations in the Complaint, are residents of the State of New Mexico, and reside at the above-listed address.

4.      The Infant Plaintiff, Veronica Martinez, is a minor child who was born March 31, 2006, with congenital birth defects, clubbed foot (right foot), and other related conditions as a result of her mother's ingestion of Zoloft. The Infant Plaintiff is represented in this action by her Mother Plaintiff who is her natural guardian and next friend.

5.      The Mother Plaintiff, April Montoya, referred to herein, is a competent adult and the biologic mother of the Infant Plaintiff.  She brings this action on behalf of the Infant Plaintiff and individually to recover medical and other expenses related to treatment resulting from the Infant Plaintiff's birth defect(s), disorder(s) and/or related illnesses and for general and special damages, including punitive damages, and such other relief as requested herein for injuries suffered as a direct result of her ingestion of Zoloft.

- 2 -

6.     At all times relevant to the allegations in the complaint, Plaintiffs resided in the United States of America or its territories.

7.     "Plaintiffs" as used herein refers to the Infant Plaintiff and Mother Plaintiff, collectively.  "Parent Plaintiff" as used herein refers to the Mother Plaintiff.

## II.     DEFENDANTS

8.     Defendant, WOLTERS KLUWER HEALTH, INC., was, and still is, a corporation organized under the laws of the State of Delaware with a principal place of business at 530 Walnut Street, 8 East, Philadelphia, Pennsylvania 19106.  Upon information and belief, Pennsylvania is the nerve center of WOLTERS KLUWER HEALTH, INC.'s business as it is the site of the corporation's headquarters and the place where the corporation's officers direct, control, and coordinate the corporation's activities.  *Hertz Corp. v. Friend, 130* S.Ct. 1181 (2010).  WOLTERS KLUWER HEALTH, INC. may be served with process by serving it registered agent The CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101.

9.     Defendant, WOLTERS KLUWER UNITED STATES, INC. is a corporation organized under the laws of the State of Delaware, which has its principal place of business located at 530 Walnut Street, 8 East, Philadelphia, PA 19106.   Upon information and belief, Pennsylvania is the nerve center of WOLTERS KLUWER UNITED STATES, INC.'s business as it is the site of the corporation's headquarters and the place where the corporation's officers direct, control, and coordinate the corporation's activities.  *Hertz Corp. v. Friend, 130* S.Ct. 1181 (2010).  WOLTERS KLUWER UNITED STATES, INC. may be served with process by serving its registered agent CT Corporation System at 116 Pine Street, Suite 320, Harrisburg, PA 17101.

10.     Defendant, PFIZER, INC. was and still is a corporation duly existing under and by virtue of the laws of the State of Delaware with its principal place of business in the New

- 3 -

York City, New York.  Pfizer may be served with process by serving it registered agent CT

Corporation, 116 Pine Street, Suite 320, Harrisburg, PA  17101.

11.     For purposes of this Complaint, Plaintiffs will reference the various Defendants

by name or by the role they played in the events and occurrences giving rise to this litigation.

Therefore, Plaintiffs refer to WOLTERS KLUWER HEALTH, INC. and WOLTERS KLUWER

UNITED STATES, INC. as "Wolters Kluwer" or as the "PEM Defendant."  Plaintiffs refer to

PFIZER, INC. as "Pfizer" or the "Manufacturing Defendant."  "Defendants" as used herein

refers to Defendants, WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED

STATES, INC., and PFIZER, INC., collectively.

### III.    JURISDICTION AND VENUE

12.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full

herein.

13.     Jurisdiction and venue are proper as Plaintiffs are informed and believe that

Defendant Wolters Kluwer is subject to suit in the Commonwealth of Pennsylvania because

presently, and at all times material to this action, Wolters Kluwer maintains its principle place of

business in Pennsylvania as determined under the "nerve center" test set forth in *Hertz Corp. v.

Friend, 130* S.Ct. 1181 (2010).  Additionally, Wolters Kluwer regularly solicited and transacted

business in the Commonwealth of Pennsylvania, receives substantial revenues from the

Commonwealth of Pennsylvania, and sells products and performs services in the Commonwealth

of Pennsylvania. Defendant Wolters Kluwer carried on a continuous and systematic part of their

business in Pennsylvania and in Philadelphia County. Furthermore, as Defendant Wolters

Kluwer regularly solicited and transacted business, received substantial revenues from the

Commonwealth of Pennsylvania, and/or distributed products in the Commonwealth of

Pennsylvania and the City of Philadelphia, Defendant Wolters Kluwer is subject to suit in the

- 4 -

Commonwealth of Pennsylvania.  In addition, Defendant Wolters Kluwer reasonably expected that its products would be used in Pennsylvania and Philadelphia County. Furthermore, a part of the events and omissions giving rise to Plaintiffs' injuries occurred in this District.

14.     At all times material to this action, Defendant Pfizer and/or its predecessors in interest and/or its subsidiaries, regularly engaged in business in the Commonwealth of Pennsylvania and the County of Philadelphia, including advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing of the pharmaceutical drug Zoloft.  Defendant Pfizer carried on a continuous and systematic part of their business in Pennsylvania and in Philadelphia County. Furthermore, as Defendant Pfizer regularly solicited and transacted business, received substantial revenues from the Commonwealth of Pennsylvania, and/or distributed products in the Commonwealth of Pennsylvania and the City of Philadelphia, Defendant Pfizer is subject to suit in the Commonwealth of Pennsylvania.  In addition, Defendant Pfizer reasonably expected that Zoloft would be used or consumed in Pennsylvania and Philadelphia County. Furthermore, a part of the events and omissions giving rise to Plaintiffs' injuries occurred in this District.

15.     This is an action for damages which exceeds the sum of fifty thousand dollars ($50,000.00).

16.     Plaintiffs' have timely filed this lawsuit within the applicable statutory limitations period.

17.     **No Basis for Removal.**  There is no basis for removal of this case to federal court. Plaintiffs are not asserting a claim or right arising under the Constitution, treaties, or laws of the United States,  thus, there is no federal question at issue pursuant to 28 U.S.C.§1441(b) and 28 U.S.C. §1331.  There is no total diversity of citizenship pursuant to 28 U.S.C. §1441(b)

Case ID: 110802546

and 28 U.S.C. §1332(c), because the Defendant is a citizen of the Commonwealth of Pennsylvania. *See also Slater v. Hoffman-La Roche Inc.*, 771 F.Supp.2d 524 (E.D. Pa. 2011).

## IV.   GENERAL ALLEGATIONS

18.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

### Plaintiffs

19.     The Mother Plaintiff took Zoloft as prescribed by her treating physician(s) while pregnant with the Infant Plaintiff. The Mother Plaintiff continued to use Zoloft on the schedule and for the period of time prescribed by the Mother Plaintiff's physician(s). The Mother Plaintiff filled her prescriptions for Zoloft at Walgreen's Pharmacy.

20.     The Mother Plaintiff and/ or the Mother Plaintiff's physician relied upon the fact that any congenital birth defects and other serious pregnancy issues would not have been listed or emphasized on the Zoloft monograph and/or drug information as a basis to believe that Zoloft was safe for use during her pregnancy and would not cause congenital birth defects.

21.     Despite the exercise of reasonable diligence in investigating the cause of the injuries, including consultations with her medical care providers, the Mother Plaintiff was not told that Zoloft could have caused the Infant Plaintiff's injuries. Nor did the Mother Plaintiff see or read any information suggesting Zoloft caused the Infant Plaintiff's injuries until a date within the applicable statute of limitations for filing Plaintiffs' claims.

22.     Had the Mother Plaintiff been adequately warned that Zoloft could cause congenital birth defects if ingested during pregnancy, she would not have taken the drug.

23.     When the Infant Plaintiff was born, she was suffering from life-threatening congenital defects.

24.     The defects suffered by the Infant Plaintiff were a direct result of  her mother's

Case ID: 110802546

ingestion of Zoloft during her pregnancy in a manner and dosage recommended and prescribed by her doctor.

### Pfizer

25.     The drug "sertraline hydrochloride" was and is advertised, analyzed, assembled, compounded, designed, developed, distributed, formulated, inspected, labeled, manufactured, marketed, packed, produced, promoted, processed, researched, sold, and tested by Pfizer, its predecessors in interest and its subsidiaries, under the trade name Zoloft $^{®}$ and is a member of a class of drugs known as "selective serotonin reuptake inhibitors" or "SSRIs."  Zoloft was first approved for use in the United States by the FDA in 1991 for the treatment of major depression in adults.

26.     Under the FDA scheme, Pfizer, knew, as a New Drug Application applicant, that it must fully, truthfully and accurately disclose to the FDA data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling which includes warnings about risks and side effects, test results for the drug, results of animal studies, results of clinical studies and the drug's bioavailability, because the data and information would be relied upon by the medical community, physicians, Plaintiffs' physicians, Plaintiffs and other foreseeable prescribers and users of Zoloft once the NDA was approved.

27.     Under the FDA scheme, Pfizer had a duty to ensure its warnings to the medical community are and remain accurate and adequate, to conduct safety surveillance of adverse events for the drug, to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug, and to update the label when new safety information was obtained.

28.     Prior to the Mother Plaintiff becoming pregnant, Pfizer knew or should have known that taking Zoloft during pregnancy posed risks to the developing fetus.  Pfizer knew or

Case ID: 110802546

should have known that Zoloft crosses the placenta, which could have important implications for the developing fetus.

29.     Prior to the Mother Plaintiff becoming pregnant, Pfizer knew or should have known that children were being born with congenital birth defects, heart defects, PPHN, and other similar conditions to women who took Zoloft during pregnancy.

30.     Prior to the time that the Mother Plaintiff ingested Zoloft during her pregnancy, Pfizer knew of the dangerous birth defects associated with Zoloft's use during pregnancy from the preclinical studies and the subsequent published studies confirming these risks.  Pfizer took no action to adequately warn or remedy the risks, but instead, concealed, suppressed, and failed to disclose the dangers.  Even in the face of the numerous published studies, Pfizer continues to fail to warn of these dangers through revised drug labeling.

31.     Pfizer had access to this information and knew that congenital birth defects would result from the use of Zoloft by women who became pregnant and the fact that physicians and the consumers such as the Mother Plaintiff herein did not fully understand the risks associated with Zoloft.

32.     Pfizer failed to fully, truthfully and accurately disclose Zoloft data to the FDA, the Plaintiffs and the Mother Plaintiff's physicians, and as a result negligently, intentionally and fraudulently misled the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs about the risks to a fetus associated with the use of Zoloft during pregnancy.

33.     Through the *Physicians' Desk Reference*, drug package inserts, patient information forms, counseling warnings, literature, marketing materials and other labeling information for Zoloft, Pfizer knowingly, intentionally and negligently disseminated incomplete, inaccurate, and/or misleading warnings and information about the true risks to a fetus when Zoloft is ingested during pregnancy, which misled the medical community, physicians and the

- 8 -

Mother Plaintiff's physicians.

34.    At all times material hereto, Pfizer knew or should have known that most physicians were not aware of or did not fully appreciate the seriousness of the congenital birth defect risks associated with use of Zoloft and that, consequently, there was a widespread tendency for physicians to prescribe Zoloft for use to women of childbearing potential. Consequently, Pfizer knew or should have known that the warnings and labels, including but not limited to, package inserts and the *Physician's Desk Reference* monograph for Zoloft, did not adequately inform physicians about the birth defects risks associated with Zoloft.

35.    Pfizer failed to warn physicians and the Mother Plaintiff herein adequately about the congenital birth defect risks associated with Zoloft, despite the fact that Pfizer knew that physicians, the medical community, the Plaintiffs, and others similarly situated relied on Pfizer to disclose what it knew or should have known from a prudent review of the information that it possessed or to which it had access.

36.    Because of the misleading information that Pfizer provided to physicians, the Plaintiffs and the FDA about the true congenital birth defect risks associated with the use of Pfizer and because of the failure of Pfizer to adequately inform physicians generally, including the Mother Plaintiff's physicians, about the true birth defect risks associated with the use of Zoloft the Mother Plaintiff's physicians never informed her of any congenital birth defects risks associated with Zoloft.   Indeed, it is believed that Pfizer represented to physicians that Zoloft was safe for use by women of childbearing years and their unborn children.

37.    Pfizer knew, or should have known, that the warnings, including but not limited to, the label and package insert for Zoloft did not disclose the true risks of birth defects from the use of Zoloft. Pfizer failed to use reasonable care to modify the warnings, including but not limited to, the label and package insert for Zoloft in order to warn physicians adequately about

Case ID: 110802546

the true congenital birth defect risks from the use of Zoloft by women who became pregnant.

38.     During the entire time Zoloft has been on the market in the United States, FDA regulations have required Pfizer to issue stronger warnings whenever there existed reasonable evidence of an association between a serious risk and Zoloft.  The regulations specifically state that a causal link need not have been proven to issue the new warnings.  Further, the regulations explicitly allowed Pfizer to issue such a warning without prior FDA approval.

39.     Thus, prior to the Mother Plaintiff's pregnancy, Pfizer had the knowledge, the means, and the duty to provide the medical community and the consuming public with a stronger warning regarding the association between Zoloft and congenital birth defects, heart defects, PPHN, and other related conditions, through all means necessary, including, but not limited to, labeling, continuing education, symposiums, posters, sales calls to doctors, advertisements, and promotional materials, etc.  Pfizer breached this duty.

40.     Despite having extensive knowledge of the extreme risks associated with the Zoloft, as well as the absolute duty to properly and adequately warn foreseeable users, Pfizer never approached the FDA to alter the label for Zoloft so that it properly and adequately warned of the risks of birth defects associated with the drug.

41.     Pfizer failed to disclose adequately the increased risk of congenital birth defects of Zoloft to the medical community and the Plaintiffs. Pfizer was aware that its failure to disclose this information to the medical community and the Plaintiffs would result in serious injury and/or death to the children or unborn fetus of women who were prescribed Zoloft by a physician who was not aware of this information.  By failing to disclose this information to the medical community and the Plaintiffs, Pfizer acted in willful, wanton and outrageous manner and with evil disregard of the rights of the Plaintiffs and this conduct caused serious and permanent injuries to the Plaintiffs.

Case ID: 110802546

42.     Pfizer, its agents, servants and employees acting in the course and scope of their employment, negligently and carelessly breached their duties to the medical community, Plaintiffs' physicians, Plaintiffs and other foreseeable users similarly situated, which breaches of duty include, but are not limited to:

    a)    failing to ensure Zoloft warnings to the medical community, physicians, the Mother Plaintiff's physicians and Plaintiffs were accurate and adequate, despite having extensive knowledge of the risks associated with the drug;

    b)    failing in its obligation to provide the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs with adequate and clinically relevant information, data and warnings regarding the adverse health risks associated with exposure to Zoloft, and/or that there existed safer and more or equally effective alternative drug products;

    c)    failing to conduct post market safety surveillance and report that information to the medical community, physicians, the Mother Plaintiff's physicians and Plaintiffs;

    d)    failing to include adequate warnings and/or provide adequate and clinically relevant information and data that would alert the medical community, physicians, Mother Plaintiff's physicians, and Plaintiffs to the dangerous risks of Zoloft;

    e)    failing to continually monitor, test, and analyze data regarding safety, efficacy and the prescribing practices for Zoloft;

    f)    failing to review all adverse drug event information (AER) and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Zoloft to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs;

    g)    failing to provide adequate post-marketing warnings and instructions after Pfizer knew or should have known of the significant risks of, among other things, congenital birth defects of Zoloft;

    h)    failing to periodically review all medical literature regarding Zoloft and failing to report data, regardless of the

Case ID: 110802546

degree of significance, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Zoloft;

i)      failing to disclose the results of the testing and other information in its possession regarding the possibility that Zoloft can interfere with the proper development of an unborn fetus;

j)      failing to warn adequately the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs of the dangers of using Zoloft during pregnancy, including the risk of congenital birth defects;

k)      representing that Zoloft was safe for use during pregnancy when, in fact, Pfizer knew or should have known that it was unsafe for this use and that Zoloft was associated with congenital birth defects;

l)      promoting and marketing Zoloft for use with pregnant women, despite the fact that Pfizer knew or should have known that Zoloft was associated with an increased risk of congenital abnormalities;

m)      promoting and marketing Zoloft as safe and effective for use with pregnant women when, in fact, it was unsafe;

n)      promoting and marketing Zoloft for non-approved (off-label) uses and/or illegally over-promoting, marketing, advertising and selling Zoloft in a zealous and unreasonable way, without regard to the potential danger that it poses for an unborn fetus;

o)      failing to independently monitor their sales of Zoloft and the medical literature, which would have alerted them to the fact that Zoloft was widely over-prescribed to women of childbearing potential as a result of inadequate warnings, including those in the package inserts and PDR monographs for Zoloft, and as a result of the over-promotion of the drug;

p)      failing to act as a reasonably prudent drug manufacturer in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling and testing of Zoloft; and/or

q)      failing to perform adequate and necessary studies to

- 12 -

determine and analyze the safety and risks associated with
Zoloft use.

43.     As a direct and proximate result of Pfizer's actions, Plaintiffs, and upon

information and belief, Mother Plaintiff's prescribing physicians, were unaware, and could not

reasonably know, or through reasonable diligence could not have reasonably known, that Zoloft

exposed the Plaintiffs to the risks and injuries alleged herein, and that those risks were the direct

and proximate result of Pfizer's acts and omissions.

### Wolters Kluwer

44.     At all times relevant to this Complaint, the PEM Defendant, Wolters Kluwer, was

in the business of authoring, analyzing, creating, compiling, designing, drafting, disseminating,

distributing, editing, evaluating, marketing, publishing and supplying prescription drug

information, labels, patient education monographs ("PEM"), patient inserts, warnings and

literature. The prescription drug information, labels, patient education monographs, patient

inserts, warnings and literature was intended by Wolters Kluwer to be provided directly to

consumers by their pharmacists for the purpose of warning consumers about the risks and side

effects of the drugs, including Zoloft, which the consumer was taking.

45.     Upon information and belief, Wolters Kluwer, voluntarily and for profit,

undertook to author, analyze, create, compile, design, draft, disseminate, distribute, edit,

evaluate, market, modify, publish and supply drug information, labels, patient education

monographs, patient inserts, warnings and literature on drugs, including Zoloft.  Wolters Kulwer

therefore owed a duty of due care to the medical community, pharmacists and the Plaintiffs

pursuant to common law, statute, regulations and/or industry standards to provide truthful,

accurate, adequate, useful, appropriate, up-to-date and complete drug information, labels, patient

education monographs, patient inserts, warnings and literature regarding Zoloft.

46.     The drug information, labels, patient education monographs, patient inserts,

- 13 -

warnings and literature prepared by Wolters Kluwer were placed in the form that was intended to reach, and did reach, pharmacy customers, including the Plaintiffs herein. The monographs prepared by Wolters Kluwer are marketed as enhancing patient safety and reducing adverse drug events by providing comprehensive, authoritative, and unbiased presentations of drug information.

47.     Wolters Kluwer contracted with Plaintiffs' pharmacies to provide drug information, labels, patient education monographs, patient inserts, warnings and literature regarding Zoloft.

48.     Having voluntarily and for profit, undertaken to instruct, advise, and warn consumers regarding the dangers and risks of using Zoloft, Wolters Kluwer has a duty to provide truthful, accurate, adequate, useful, appropriate, up-to-date and complete information and warnings in the written Zoloft drug information, labels, patient education monographs, patient inserts, warnings or literature that it authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, modifying, published, supplied and made available for the ultimate purpose of informing consumers, including the Plaintiffs.

49.     Wolters Kluwer, breached their duty of care, by directly or indirectly, negligently and/or defectively, authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, modifying, publishing and supplying prescription drug information, labels, patient education monographs, patient inserts, warnings and literature that were unsuitable for their intended purpose of warning consumers about the risks and side effects of Zoloft, particularly the risks and side effects relating to congenital birth defects.

50.     Wolters Kluwer had actual and/or constructive knowledge that pharmacists, medical professionals, and consumers, such as Plaintiffs, would rely upon the information and warnings disseminated in their drug information, labels, patient education monographs, patient

Case ID: 110802546

inserts, warnings and literature for Zoloft, and that many patients, in accordance with their prescription and the information and warnings disseminated in Wolters Kluwer's drug information, labels, patient education monographs, patient inserts, warnings and literature for Zoloft, would be likely to be prescribed, receive and ingest Zoloft.

51.     Wolters Kluwer knew, or should have known, that the incomplete, inaccurate, and misleading information and warnings disseminated in their drug information, labels, patient education monographs, patient inserts, warnings and literature for Zoloft it supplied to consumers, such as Plaintiffs, created an unreasonable risk of injury, including an unreasonable risk of congenital birth defects to a developing fetus.

52.     It was foreseeable that Wolters Kluwer's failure to provide truthful, accurate, adequate, useful, appropriate, up-to-date and complete information and warnings regarding Zoloft could cause harm to consumers, including the Plaintiffs herein, could increase the risk of harm to consumers, including the Plaintiffs herein, and that consumers, including the Plaintiff herein, could forseeably suffer harm because of consumers' and medical professionals' reliance on the PEM Defendant's undertaking to provide information and warnings about Zoloft, that was intended to be provided directly to, or made available to consumers, including the Plaintiff herein.

53.     Wolters Kluwer promotes itself as an unbiased supplier of up to date scientific drug information. It claims that its drug database and information reduce adverse drug events. Wolters Kluwer also touts the monographs it provides as being comprehensive, authoritative, and unbiased presentations of key drug information to customers and patients. Further, on its website Wolters Kluwer claims the following concerning its prescription drug information:

> "[u]p-to date and comprehensive, our drug databases provide clinicians, pharmacists, payers and pharmaceutical companies with the reliable drug information they need to work efficiently and protect patients. From databases with drug product and pricing

Case ID: 110802546

information to clinical decision support databases that identify drug conflicts, to consumer-oriented information written to educate patients about their drug therapy, we have a database for most applications' needs across the health care continuum.[1]

. . .

Medi-Span®, a part of Wolters Kluwer Health, is the leading provider of prescription drug information and drug interactions database solutions for thousands of health care professionals worldwide.[2]

In truth, Wolters Kluwer failed to ensure that the prescription drug information and warnings it provided regarding Zoloft was truthful, accurate, adequate, useful, appropriate, up-to-date and complete.

54.    As a direct and proximate result of Wolters Kluwer's actions, Plaintiffs, and upon information and belief, Mother Plaintiff's prescribing physicians and pharmacists, were unaware, and could not reasonably know, or through reasonable diligence could not have reasonably known, that Zoloft exposed the Plaintiffs to the risks and injuries alleged herein, and that those risks were the direct and proximate result of Wolters Kluwer's acts and omissions.

### Injuries

55.    As a direct and proximate result of the conduct of Defendants as described herein and as a result of the Mother Plaintiff's ingestion of Zoloft, the Infant Plaintiff suffers from physical injuries, some or all of which are permanent and/or may be fatal, and the Infant Plaintiff may suffer in the future from other diseases or conditions which have not yet been diagnosed. Further, the Infant Plaintiff has sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, psychological injury, disability, disfigurement caused by the surgeries and procedures the Infant Plaintiff has already undergone, and the surgeries and procedures that Infant Plaintiff will need to undergo in the future, and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, and/or

---

[1]   Wolters Kluwer Medi-span product webpage, http://www.medi-span.com/drug-database.aspx (Aug. 5, 2011).

[2]   Wolters Kluwer Medi-span product webpage, http://www.medi-span.com/index.aspx (Aug. 5, 2011).

Case ID: 110802546

other related conditions, as well as past and future general and special damages, including past and future medical care and treatment, lost wages and lost earning capacity.

56.     Infant Plaintiff's serious and permanent injuries were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, physicians, Mother Plaintiff's physicians, pharmacists and Plaintiffs.

57.     As a direct and proximate result of the conduct of Defendants as described herein, Mother Plaintiff has suffered and will in the future continue to suffer medical, nursing, hospital, pharmacy, rehabilitative and related costs and expenses for the Infant Plaintiff's injuries and care, along with lost wages, lost earning capacity, economic losses, and other damages for which they are entitled to compensation. These injuries and damages were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, Mother Plaintiff's physicians, pharmacists and Plaintiffs.

58.     The Parent Plaintiff, as result of the Mother Plaintiff's ingestion of Zoloft and as a direct and proximate result of the conduct of Defendants described herein, have suffered, and will suffer in the future, great emotional pain, mental anguish and other serious injury and loss, including loss of consortium, services, support, companionship, society, love and affection. These injuries and damages were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, Mother Plaintiff's physicians, pharmacists and Plaintiffs.

59.     The Defendants are liable to the Plaintiffs for all general, special and punitive

Case ID: 110802546

damages, as well as delay damages, and other relief to which they are entitled to by law.

## V.   DISCOVERY RULE, TOLLING AND FRAUDULENT CONCEALMENT

60.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

61.   Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, class action tolling, delayed discovery, discovery rule, fraudulent concealment, and/or minority tolling.

62.   Plaintiffs plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiffs had been injured, the cause of the injury, and the tortuous nature of the wrongdoing that caused the injury.

63.   Despite diligent investigation by Plaintiffs into the cause of their injuries, including consultations with Plaintiff's medical providers, the nature of Plaintiff's injuries and damages, and their relationship to Zoloft was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiffs' claims. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed well within the applicable statutory limitations period.

64.   The running of the statute of limitations in this cause is tolled due to equitable tolling.  Defendants are estopped from asserting a statute of limitations defense due to Defendants' fraudulent concealment, through affirmative misrepresentations and omissions, from Plaintiffs and Plaintiff's physicians and pharmacists of the true risks associated with taking Zoloft.  As a result of Defendants' fraudulent concealment, Plaintiffs and Plaintiff's prescribing physicians and pharmacists were unaware, and could not have known or have learned through

Case ID: 110802546

reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the wrongful acts and omissions of the Defendants.

65.     The running of the statute of limitations in this cause may be tolled due to the pendency of a class action proceeding against one or more of the Defendants herein.   Class Action tolling is proper where Plaintiffs are members of an asserted class and the claims asserted in the class action proceeding are the same as the claims asserted in this action.

66.     The statute of limitations is tolled due to the minority of the Plaintiff.   Plaintiff was a minor at the time Plaintiff ingested Zoloft.   This action was filed within the applicable statutory period after Plaintiff achieved the age of majority.

67.     The statute of limitations is tolled due to the minority of the Plaintiff. This action was filed within the applicable statutory period after Plaintiff achieved the age of majority.

68.     The statute of limitations is tolled due to the disability of Plaintiffs.   Plaintiffs were under one or more of the following recognized disabilities:   mental illness, infancy, insanity, inability to comprehend the nature of legal proceedings, imprisonment, absence from the state due to government service, or other legal disability recognized by the applicable state law.

69.     Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Plaintiffs the nature of Plaintiffs' injury and the connection between the injury and Defendants' tortious conduct.

## VI.     CLAIMS FOR RELIEF

70.     The Plaintiffs set forth the following statements and claims in the alternative such that the sufficiency of this Complaint shall not be defeated by an inconsistency or insufficiency (if any) among any one or more of the alternative statements or claims.

Case ID: 110802546

## COUNT ONE – STRICT PRODUCT LIABILITY – FAILURE TO WARN

*(As Against Pfizer)*

71.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

72.     Manufacturing Defendant is liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts for the negligent and/or willful failure to provide adequate warnings and other clinically relevant information and data regarding the appropriate use of Zoloft to the Plaintiffs and the Mother Plaintiff's prescribing physicians.

73.     Pfizer, as a manufacturer of pharmaceutical drugs, is held to the level of knowledge of an expert in the field, and further, Manufacturing Defendant knew or should have known that the warnings and other clinically relevant information and data which they distributed regarding the risks of congenital birth defects associated with the use of Zoloft were inadequate.

74.     Plaintiffs, and the Mother Plaintiff's prescribing physicians, did not have the same knowledge as Manufacturing Defendant and no adequate warning or other clinically relevant information and data was communicated to them or to their physicians.

75.     Manufacturing Defendant had a continuing duty to provide consumers, including Plaintiffs and their physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with Zoloft as it became or could have become available to Manufacturing Defendant.

76.     Manufacturing Defendant manufactured, marketed, promoted, distributed, and sold an unreasonably dangerous and defective prescription drug, Zoloft in the stream of commerce, to health care providers empowered to prescribe and dispense Zoloft to consumers, including Mother Plaintiff, without adequate warnings and other clinically relevant information

Case ID: 110802546

and data.  Through both omissions and affirmative misstatements, Manufacturing Defendant misled the medical community about the risks and benefits of Zoloft, which resulted in injury to Plaintiffs.

77.    Despite the fact that Manufacturing Defendant knew or should have known that Zoloft caused unreasonable and dangerous side effects, including congenital birth defects, they continued to manufacture, market, promote, distribute, and sell Zoloft without stating that there existed safer and more or equally effective alternative drug products and/or providing adequate clinically relevant information and data.

78.    Manufacturing Defendant knew or should have known that consumers and Plaintiffs specifically, would foreseeably and needlessly suffer injury as a result of the Manufacturing Defendant's failures.

79.    Manufacturing Defendant breached their duty to provide timely and adequate warnings, instructions, and information, in the following particulars:

a)    failing to ensure Zoloft warnings to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs were accurate and adequate despite having extensive knowledge of the risks associated with Zoloft;

b)    failing in their obligation to provide the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs with adequate clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Zoloft, and/or that there existed safer and more or equally effective alternative drug products;

c)    failing to conduct post market safety surveillance and report that information to the medical community, the Mother Plaintiff's physicians, and Plaintiffs;

d)    failing to include adequate warnings and/or providing adequate and clinically relevant information and data that would alert the medical community, the Mother Plaintiff's physicians, and Plaintiffs to the dangerous risks of Zoloft, including, among other things, the association with

- 21 -

congenital birth defects;

e)    failing to continually monitor, test, and analyze data regarding safety, efficacy, and prescribing practices of their marketed drugs, including Zoloft;

f)    failing to review all adverse drug event information (AER) and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Zoloft to the medical community, the Mother Plaintiff's physicians, and Plaintiffs;

g)    failing to provide adequate post-marketing warnings and instructions after Manufacturing Defendant knew or should have known of the significant risks of, among other things, congenital birth defects of Zoloft;

h)    failing to periodically review all medical literature regarding Zoloft and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of their warnings, efficacy, or safety of Zoloft;

i)    failing to disclose the results of the testing and other information in their possession regarding the possibility that Zoloft can interfere with the proper development of an unborn fetus;

j)    failing to warn adequately the medical community, the general public, and Plaintiffs of the dangers of using Zoloft during pregnancy, including the risk of congenital birth defects; and/or

k)    representing that Zoloft was safe for use during pregnancy, when in fact, Manufacturing Defendant knew or should have known that Zoloft was unsafe for this use and that Zoloft was associated with congenital birth defects.

80.    Manufacturing Defendant continued to aggressively manufacture, market, promote, distribute, and sell Zoloft, even after they knew or should have known of the unreasonable risks of congenital birth defects from Zoloft.

81.    Manufacturing Defendant had an obligation to provide Plaintiffs and the Mother Plaintiff's physicians with adequate and clinically relevant information, and data and warnings

- 22 -

regarding the adverse health risks associated with exposure to Zoloft, and/or that there existed safer and more or equally effective alternative drug products.

82.    By failing to provide Plaintiffs and the Mother Plaintiff's physicians with adequate, clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Zoloft, and/or to inform them that there existed safer and more or equally effective alternative drug products, Manufacturing Defendant breached their duty of reasonable care and safety.

83.    As a direct and proximate result of the actions and inactions of Manufacturing Defendant as set forth above, Plaintiffs were exposed to Zoloft, as a result suffered, and continue to suffer, the injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

<u>**COUNT TWO – STRICT PRODUCT LIABILITY – DESIGN DEFECT**</u>

*(As Against Pfizer)*

84.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

85.    Manufacturing Defendant manufactured, marketed, promoted, distributed, and sold Zoloft in the stream of commerce which was:

    a)      unreasonably defective in design because it is a teratogenic compound that unreasonably increased the risks of congenital birth defects;

    b)      defective in design and was not reasonably safe as intended to be used, subjecting Plaintiffs to risks which exceeded the benefits of Zoloft;

- 23 -

Case ID: 110802546

c)     defective in design, making use of Zoloft more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with Plaintiff's underlying condition;

d)     defective in design, making use of Zoloft more dangerous than the ordinary consumer would expect and more dangerous than other risks associated with like products;

e)     defective in design in that Zoloft contained insufficient, incorrect, and defective warnings in that they failed to alert physicians and users, including Plaintiffs, of the risks of adverse effects; and/or

f)     defective in design in that Zoloft was not safe for its intended use and was inadequately tested.

86.    Manufacturing Defendant knew and intended that Zoloft would be used by consumers, including the Mother Plaintiff, without any inspection for defects, and that the Mother Plaintiff and her physicians would rely upon the representations made by Manufacturing Defendant on Zoloft's product labels and otherwise.

87.    Prior to the manufacturing, sale, and distribution of Zoloft, Manufacturing Defendant knew, or was reckless in not knowing, that Zoloft was in a defective condition.

88.    The Mother Plaintiff used Zoloft for its intended purpose and could not have discovered any defect therein through the exercise of due care.

89.    At the time that Manufacturing Defendant manufactured, marketed, promoted, distributed, and sold Zoloft there existed safer and more or equally effective alternative drug products.

90.    As a direct and proximate result of the actions and inactions of Manufacturing Defendant as set forth above, Plaintiffs were exposed to Zoloft, and as a result, suffered, and continue to suffer, injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendant for an amount in excess of $50,000.00, compensatory and

Case ID: 110802546