punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT THREE – NEGLIGENCE

### *(As Against Pfizer)*

91.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

92.     Manufacturing Defendant is liable to Plaintiffs pursuant to state common law and/or state Product Liability Acts due to their negligent advertizing, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling and testing Zoloft.

93.     At all times mentioned herein, Manufacturing Defendant was under a duty to exercise reasonable care in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Zoloft to ensure that use of Zoloft did not result in avoidable injuries.

94.     At all times relevant to this lawsuit, Manufacturing Defendant owed a duty to consumers, including Plaintiffs and their health care providers, to assess, manage, and communicate the risks, dangers, and adverse effects of Zoloft, and to warn the medical community, consumers, the Plaintiffs, and the Mother Plaintiff's physicians of those risks, dangers, and adverse effects.

Case ID: 110802546

95.     Manufacturing Defendant's duties included, but were not limited to, carefully and properly advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Zoloft, which was placed in the stream of commerce, and providing adequate information regarding the appropriate use of Zoloft.

96.     Manufacturing Defendant negligently and carelessly breached the above-described duties to Plaintiffs by committing negligent acts and/or omissions, including, but not limited to, the following:

a)      failing to ensure Zoloft's warnings to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs were accurate and adequate, despite having extensive knowledge of the risks associated with Zoloft;

b)      failing in their obligation to provide the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs with adequate and clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Zoloft, and/or that there existed safer and more or equally effective alternative drug products;

c)      failing to conduct post market safety surveillance and report that information to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs;

d)      failing to include adequate warnings and/or provide adequate and clinically relevant information and data that would alert the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs to the dangerous risks of Zoloft;

e)      failing to continually monitor, test, and analyze data regarding safety, efficacy, and the prescribing practices for Zoloft;

f)      failing to review all adverse drug event information (AER) and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused

- 26 -

by Zoloft to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs;

g)   failing to provide adequate post-marketing warnings and instructions after Manufacturing Defendant knew or should have known of the significant risks of, among other things, congenital birth defects of Zoloft;

h)   failing to periodically review all medical literature regarding Zoloft and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Zoloft;

i)   failing to disclose the results of the testing and other information in their possession regarding the possibility that Zoloft can interfere with the proper development of an unborn fetus;

j)   failing to warn adequately the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs of the dangers of using Zoloft during pregnancy, including the risk of congenital birth defects;

k)   representing that Zoloft was safe for use during pregnancy when, in fact, Manufacturing Defendant knew or should have known that Zoloft was unsafe for this use and that Zoloft was associated with congenital birth defects;

l)   promoting and marketing Zoloft for use with pregnant women, despite the fact that the Manufacturing Defendant knew or should have known that Zoloft was associated with an increased risk of congenital abnormalities;

m)   promoting and marketing Zoloft as safe and effective for use with pregnant women when, in fact, it was unsafe;

n)   promoting and marketing Zoloft for non-approved (off-label) uses and/or illegally over-promoting, marketing, advertising, and selling Zoloft in a zealous and unreasonable way, without regard to the potential danger that it posed for an unborn fetus;

o)   failing to independently monitor their sales of Zoloft and the medical literature, which would have alerted them to the fact that Zoloft was widely over-prescribed to women of childbearing potential as a result of inadequate warnings in the package inserts and PDR monographs for Zoloft, and as a result of the over-promotion of Zoloft;

- 27 -

p)      failing to act as a reasonably prudent drug manufacturer in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Zoloft;

q)      failing to perform adequate and necessary studies to determine and analyze the safety and risks associated with Zoloft's use;

r)      failing to use ordinary care in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Zoloft so as to reveal and communicate the risk of congenital birth defects to the medical community, the Mother Plaintiff's physicians, and Plaintiffs;

s)      failing to accompany Zoloft with adequate information that would alert the medical community, the Mother Plaintiff's physicians, and Plaintiffs to the potential adverse side effects associated with the use of Zoloft and the nature, severity, and duration of such adverse effects;

t)      failing to conduct adequate post-marketing studies, non-clinical and clinical testing, and post-marketing surveillance and analyses to determine and communicate the safety profile and side effects of Zoloft;

u)      continuing to promote the safety and effectiveness of Zoloft, while downplaying their risks, even after Manufacturing Defendant knew or should have known of the risks of Zoloft;

v)      failing to provide consumers, such as Plaintiffs and Plaintiffs' physicians, with scientific data which indicated that Zoloft was unreasonably dangerous, and that there were no women of childbearing potential and/or pregnant women in whom the benefits of Zoloft outweighed the risks;

w)      being careless and negligent in that Manufacturing Defendant knew or should have known that Zoloft was a substance that would be actively transported through the

placenta during pregnancy and could inhibit the health and development of the fetus;

x)    negligently and carelessly promoting Zoloft as safe and effective for use with women of childbearing potential and/or pregnant women when, in fact, it was unsafe;

y)    negligently and carelessly over-promoting Zoloft in a zealous and unreasonable way, without regard to the potential danger that it posed to an unborn fetus; and/or

z)    negligently and carelessly failing to act as a reasonably prudent drug manufacturer, distributor, marketer, promoter, or seller would under same or similar circumstances.

97.    Although Manufacturing Defendant knew or should have known that Zoloft caused unreasonably dangerous side effects, including congenital birth defects, Pfizer continued to market Zoloft, despite the fact there were safer and more or equally effective alternative drug products.

98.    Manufacturing Defendant knew or should have known that consumers, such as Plaintiffs, would suffer injury as a result of Manufacturing Defendant's failure to exercise ordinary care, as described above.

99.    The conduct of Manufacturing Defendant was a direct and proximate cause of Plaintiffs' injuries.  Manufacturing Defendant knew or should have known that Zoloft could be dangerous and unsafe for pregnant women and the developing fetus.

100.    As a direct and proximate result of the negligent acts and/or omissions of Manufacturing Defendant as set forth above, Plaintiffs suffered, and will continue to suffer into the future, injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

- 29 -

Case ID: 110802546

## COUNT FOUR – NEGLIGENT DESIGN

*(As Against Pfizer)*

101.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full

herein.

102.    Manufacturing Defendant is liable to Plaintiffs under state common law and/or

the applicable state Product Liability Acts for the negligent design of Zoloft.

103.    At all times relevant to this lawsuit, Manufacturing Defendant owed a duty to

consumers, including Plaintiffs and their health care providers, to exercise reasonable care in the

design of Zoloft.

104.    Manufacturing Defendant negligently and carelessly breached this duty of care to

Plaintiffs because they designed Zoloft which:

    a)    was and is unreasonably defective in design because it is a teratogenic compound that unreasonably increased the risks of congenital birth defects;

    b)    was and is defective in design and was not reasonably safe as intended to be used, subjecting Plaintiffs to risks which exceeded the benefits of Zoloft;

    c)    was and is defective in design, making use of Zoloft more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the Mother Plaintiff's underlying condition;

    d)    was and is defective in design, making use of Zoloft more dangerous than the ordinary consumer would expect and more dangerous than other risks associated with like products;

    e)    was and is defective in design in that it contained insufficient, incorrect and defective warnings in that they failed to alert physicians and users, including the Mother Plaintiff of the risks of adverse effects;

    f)    was and is defective in design in that it was not safe for its intended use and was inadequately tested;

- 30 -

g)    was and is defective in design because its risks exceeded any benefit of Zoloft; and/or

h)    failed to act as a reasonably prudent drug manufacturer, seller, promoter, distributor, or marketer would have acted with respect to the design of Zoloft.

105.    As a direct and proximate result of the negligent acts and/or omissions of the Manufacturing Defendant, Plaintiffs suffered injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, costs of suit in an amount to be determined upon the trial of this matter.

## COUNT FIVE – FRAUD, MISREPRESENTATION AND SUPPRESSION

### *(As Against Pfizer)*

106.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

107.    Manufacturing Defendant is liable to Plaintiffs under the state common law and/or state Product Liability Acts for fraudulently, intentionally, and/or negligently misrepresenting to the public, and to Plaintiffs, both directly and by and through the Mother Plaintiff's prescribing physicians, the safety and effectiveness of Zoloft when used by women of childbearing potential, and/or fraudulently, intentionally, and/or negligently concealing, suppressing or omitting material, adverse information regarding the safety and effectiveness of Zoloft when used by women of childbearing potential.

Case ID: 110802546

108.   Manufacturing Defendant's fraudulent, intentional, and/or negligent material misrepresentations and omissions regarding the safety and efficacy of Zoloft and of Zoloft's side effects, including the risk of congenital birth defects, were communicated to Plaintiffs directly through promotional materials, advertising, product inserts, and the monograph provided with Plaintiff's prescription with the intent that the Mother Plaintiff use Zoloft.   The safety and efficacy of Zoloft was also fraudulently, intentionally, and/or negligently misrepresented to the Mother Plaintiff's prescribing physician with the intent that such misrepresentations would cause Zoloft to be prescribed to the Mother Plaintiff.

109.   Manufacturing Defendant either knew or should have known that the material representations they were making regarding Zoloft's safety, efficacy, and side effects were false.

110.   Manufacturing Defendant fraudulently, intentionally, and/or negligently made the misrepresentations and/or actively concealed, suppressed, or omitted this material information with the intention and specific desire to induce the Mother Plaintiff, the Mother Plaintiff's physician, and the consuming public to use and prescribe Zoloft.   Manufacturing Defendant fraudulently, intentionally, and/or negligently knew or should have known that the Mother Plaintiff, the Mother Plaintiff's physician, and the consuming public would rely on such material misrepresentations and/or omissions in selecting Zoloft for the treatment of the Mother Plaintiff. Manufacturing Defendant knew or should have known that the Mother Plaintiff and the Mother Plaintiff's physician would rely upon their false representations and/or omissions.

Case ID: 110802546

111.   Manufacturing Defendant made these material misrepresentations and/or omissions and actively concealed adverse information at a time when they, their agents and/or their employees knew or should have known that Zoloft had defects, dangers, and characteristics that were other than what had been represented to the medical community and the consuming public, including the Plaintiffs herein.  Those misrepresentations and omissions further include, but are not limited to, the following particulars:

a)   Manufacturing Defendant failed to disclose or concealed that their pre-clinical and clinical testing, and post-marketing surveillance was inadequate to determine the safety and side effects of Zoloft;

b)   Manufacturing Defendant failed to disclose or concealed data showing that Zoloft increased the risk of congenital birth defects;

c)   Manufacturing Defendant failed to include adequate warnings with Zoloft about the potential and actual risks, and nature, scope, severity, and duration of any serious side effects of this drug, including, without limitation, the increased risk of congenital birth defects, other injuries and death, either compared to the use of alternative drug products in its class or compared to the use of no drug products; and/or

d)   Manufacturing Defendant concealed and continues to conceal past and present facts, including that as early as the 1990's, Manufacturing Defendant was aware of and concealed their knowledge of an association between the use of Zoloft and dangerous side effects, including the increased risk of congenital birth defects, from the consuming public, including Plaintiffs and the Mother Plaintiff's physicians.

112.   Manufacturing Defendant's material misrepresentations and/or active concealment, suppression, and omissions were perpetuated directly and/or indirectly by Manufacturing Defendant, their sales representatives, employees, distributors, agents, and/or detail persons, through the databases, printouts, monographs, and other information drafted,

Case ID: 110802546

prepared, marketed, sold, and supplied by Manufacturing Defendant, their sales representatives, employees, distributors, agents, and/or detail persons.

113. Manufacturing Defendant's material misrepresentations and/or active concealment, suppression, and omissions constitute a continuing tort.

114. Through its product inserts, Manufacturing Defendant continued to misrepresent the potential risks and complications associated with Zoloft.

115. Manufacturing Defendant had a post-sale duty to warn physicians and Plaintiffs about the potential risks and complications associated with Zoloft they manufactured and sold in a timely manner.

116. Manufacturing Defendant fraudulently, intentionally, and/or negligently misrepresented the safety and efficacy of Zoloft in their labeling, advertising, product inserts, promotional materials, or other marketing.

117. If Plaintiffs and the Mother Plaintiff's physicians had known the true facts concerning the risks of Zoloft, in particular, the risk of congenital birth defects, they would not have prescribed and used Zoloft, and would have instead prescribed and used one of the safer alternatives, or no drug.

118. Plaintiffs' and Plaintiff's physicians' reliance upon the Manufacturing Defendant's material misrepresentations was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning Zoloft, while Plaintiffs and Plaintiff's physicians were not in a position to know the true facts, and because Manufacturing Defendant overstated the benefits and safety of Zoloft, and concomitantly downplayed the risks of its use, including congenital birth defects, thereby inducing the Mother Plaintiff and the Mother Plaintiff's physician to use Zoloft, in lieu of other, safer alternatives, or no drug at all.

- 34 -

Case ID: 110802546

119.    As a direct and proximate result of the Plaintiffs' and the Mother Plaintiff's physicians' reliance on Manufacturing Defendant's misrepresentations and concealment concerning the risks and benefits of Zoloft, Plaintiffs suffered injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT SIX – CONSTRUCTIVE FRAUD

### *(As Against Pfizer)*

120.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

121.    Manufacturing Defendant is liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts for constructive fraud in the manufacturing, distribution, and sale of Zoloft.

122.    At the time Zoloft was manufactured, distributed, and sold by Manufacturing Defendant to Plaintiffs, Manufacturing Defendant was in a unique position of knowledge concerning the safety and effectiveness of Zoloft, which knowledge was not possessed by Plaintiffs or the Mother Plaintiff's physicians, and Manufacturing Defendant thereby held a position of superiority over Plaintiffs.

123.    Through their unique knowledge and expertise regarding the defective nature of Zoloft, and through their marketing statements to physicians and patients in advertisements, promotional materials, and other communications, Manufacturing Defendant professed that they

Case ID: 110802546

were in possession of facts demonstrating that Zoloft was safe and effective for its intended use and was not defective.

124.    Manufacturing Defendant's representations to the Mother Plaintiff's physicians were made to induce the purchase of Zoloft, and Plaintiffs and their physicians relied upon those statements when purchasing and administering Zoloft.

125.    Manufacturing Defendant took unconscionable advantage of their dominant position of knowledge with regard to Plaintiffs and their physicians and engaged in constructive fraud in their relationship.

126.    Plaintiffs and the Mother Plaintiff's physicians reasonably relied on Manufacturing Defendant's representations.

127.    As a direct and proximate result of Manufacturing Defendant's constructive fraud, Plaintiffs have suffered injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT SEVEN – BREACH OF EXPRESS AND IMPLIED WARRANTIES

*(As Against Pfizer)*

128.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

129.    Manufacturing Defendant is liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts for the breach of express and implied warranties of Zoloft.

130.    At all times hereinafter mentioned, upon information and belief, Manufacturing

Case ID: 110802546

Defendant, by directly and indirectly advertising, marketing, and promoting Zoloft for the treatment of women, including women of childbearing potential and pregnant women, and by placing Zoloft in the stream of commerce knowing that Zoloft would be prescribed to pregnant women in reliance upon the representations or omissions of Manufacturing Defendant, expressly warranted to all foreseeable users of Zoloft, including the Mother Plaintiff and the Mother Plaintiff's physicians, that Zoloft was safe and effective for the treatment of women during pregnancy and without significant risk to the fetus.

131.   Manufacturing Defendant impliedly warranted in manufacturing, distributing, selling, advertising, marketing, and promoting Zoloft to all foreseeable users, including the Mother Plaintiff and the Mother Plaintiff's physicians, that Zoloft was safe and effective for the purposes for which it had been placed in the stream of commerce by Manufacturing Defendant, including for the treatment of pregnant women, and that Zoloft was reasonably safe, proper, merchantable, and fit for its intended purpose, including for the treatment of pregnant women and without significant risk to the fetus.

132.   At all time relevant hereto, Plaintiffs and the Mother Plaintiff's physicians relied upon the aforesaid express and implied warranties by Manufacturing Defendant.

133.   The Mother Plaintiff's use of Zoloft, and the Mother Plaintiff's physicians' prescribing of Zoloft was consistent with the purposes for which Manufacturing Defendant directly and indirectly advertised, marketed, and promoted Zoloft, and the Mother Plaintiff's use of Zoloft, and the Mother Plaintiff's physicians' prescribing of Zoloft was reasonably contemplated, intended, and foreseen by Manufacturing Defendant at the time of the distribution and sale of Zoloft by Manufacturing Defendant, and, therefore, the Mother Plaintiff's use of Zoloft was within the scope of the above-described express and implied warranties.

134.   Manufacturing Defendant breached the aforesaid express and implied warranties

Case ID: 110802546

because Zoloft was not safe and effective for the treatment of women during pregnancy because it exposed the developing fetus to a significant risk of serious injury, and because the Mother Plaintiff's use of Zoloft for treatment during her pregnancy caused the Infant Plaintiff's injuries.

135.    As a direct and proximate result of Manufacturing Defendant's breach of express and implied warranties, Plaintiffs suffered injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## <u>COUNT EIGHT – NEGLIGENCE</u>

*(As Against Wolters Kluwer)*

136.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

137.    Wolters Kluwer was negligent, and breached duties owed to Plaintiffs with respect to Zoloft in the following regard:

a)    Despite knowledge of injurious side effects, Wolters Kluwer failed to author, analyze, create, compile, design, draft, disseminate, distribute, edit, evaluate, market, publish, and supply prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature to Plaintiffs regarding the adverse effects associated with Zoloft's foreseeable use by Plaintiff;

b)    Wolters Kluwer recklessly, improperly, and negligently failed to provide truthful, accurate, adequate, useful, appropriate, up-to-date and complete information and warnings in the written Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature that it authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published, and supplied for the ultimate purpose of informing consumers including the Plaintiffs;

Case ID: 110802546

c)      Wolters Kluwer knew or should have known through the exercise of reasonable care that the prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature provided to Plaintiffs and other Zoloft consumers substantially understated the risks and dangers of ingesting the drug Zoloft;

d)      Wolters Kluwer failed to use reasonable care to modify the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature to adequately warn Plaintiffs, patients, pharmacists, and physicians about the true risks of Zoloft use;

e)      Wolters Kluwer failed to properly assess, analyze, and interpret the studies, research, adverse event reports, and other information available regarding the dangers and side effects of Zoloft use;

f)      Wolters Kluwer omitted and/or minimized information and warnings regarding congenital birth defects;

g)      Wolters Kluwer, directly or indirectly, negligently and/or defectively authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature that was unsuitable for their intended purpose of warning consumers about the risks and side effects of Zoloft that the Plaintiff was taking;

h)      Wolters Kluwer had actual and/or constructive knowledge that pharmacists, medical professionals, and consumers, such as Plaintiffs, would rely upon the information and warnings disseminated in their prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature for Zoloft, and that many patients, in accordance with their prescription and prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature would be likely to ingest Zoloft; and/or

i)      Wolters Kluwer knew, or should have known, that the incomplete, inaccurate, and misleading prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature it supplied to consumers, such as Plaintiffs, regarding the drug Zoloft, created an

unreasonable risk of injury, including an unreasonable risk
of congenital birth defects to a developing fetus.

138.   As a result of PEM Defendant's negligence and their willful and wanton
misconduct, Zoloft was prescribed and used by the Mother Plaintiff thereby causing Plaintiffs to
sustain reasonably foreseeable, serious and permanent damages and injuries as alleged in this
Complaint.   Wolters Kluwer's negligence and their willful and wanton misconduct was a
proximate cause of Plaintiffs' harm and injuries.

139.   Wolters Kluwer's conduct fell below the required standard of care in that it failed
to comply with the minimal standards of conduct adhered to by a reasonably prudent company in
the business of preparing consumer warnings and information in connection with pharmaceutical
products.

140.   The negligent and/or willful and wanton conduct described above directly and
proximately caused Plaintiffs' injuries.   Had Wolters Kluwer met its duty and provided truthful,
accurate, adequate, useful, appropriate, up-to-date and complete warnings regarding Zoloft, the
Mother Plaintiff would not have ingested Zoloft.   Instead, Plaintiffs relied upon the negligently
prepared prescription drug information, labels, patient education monographs, patient inserts,
warnings, and literature to Plaintiffs' detriment.

141.   As a direct and proximate result of the actions and inactions of PEM Defendant as
set forth above, Plaintiffs were exposed to Zoloft, and suffered, and will continue to suffer into
the future, injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and
against PEM Defendant for an amount in excess of $50,000.00, compensatory and punitive
damages, delay damages, and costs of suit in an amount to be determined upon the trial of this
matter.

Case ID: 110802546

## COUNT NINE – STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN

*(As Against Wolters Kluwer)*

142.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

143.    Wolters Kluwer engaged in the business of authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, publishing and supplying drug information intended to be provided to consumers of prescription drugs.  To that end, Wolters Kluwer authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published, supplied and contributed into the stream of commerce the prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature which are a component of the Zoloft product as sold to Plaintiffs.

144.    At all times material hereto, both the drug Zoloft and the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied by Wolters Kluwer, was defective and unreasonably dangerous to Plaintiffs and other foreseeable users at the time it left the control of Wolters Kluwer.

145.    At all times material hereto, the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature was expected to reach, and did reach, consumers, including the Plaintiffs, without substantial change in the content or condition of the prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature.

146.    Plaintiff was of the type of patient that Wolters Kluwer could reasonably expect

Case ID: 110802546

would fill a prescription for Zoloft and would receive Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature.

147.    The Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature was defective and unreasonably dangerous when the product was initially drafted, subsequently when it was promoted, when it was placed into the stream of commerce, and when it was received by Plaintiffs in ways which include, but are not limited to, one or more of the following:

a)    When placed in the stream of commerce, the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature contained unreasonably dangerous design defects and was not reasonably safe for its intended use of warning consumers about the risks of the drug.  As a result, Plaintiffs were subjected to risks which exceeded the benefits of the drug;

b)    The Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature provided by Wolters Kluwer was insufficiently researched, tested, and evaluated prior to its initial release, sale, or use;

c)    The Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature provided by Wolters Kluwer was not adequately revised or amended based on emerging scientific and medical data and study results;

d)    Upon information and belief, the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature failed to include, or failed to adequately emphasize, Zoloft's harmful propensity to cause congenital birth defects; and/or

e)    The Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature was not of a nature that would suffice to apprise a reasonable consumer of the full nature and extent of the risks and side effects of Zoloft use, particularly the risk of congenital birth defects, despite the fact that these risks were known or reasonably scientifically knowable at the

- 42 -

Case ID: 110802546

time the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature left the possession of Wolters Kluwer.

148.    Wolters Kluwer knew, or in light of reasonably available scientific knowledge should have known, about the danger that Zoloft would cause injuries, particularly congenital birth defects.   A reasonably competent PEM provider, when authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, publishing and supplying and updating Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, would have included a warning sufficient to apprise consumers of the risk of congenital birth defects resulting from Zoloft use. Wolters Kluwer's Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature was defectively designed because it failed to include an adequate warning regarding the risk of congenital birth defects.

149.    As a direct and proximate result of PEM Defendant's actions and inactions as set forth above, Plaintiffs were exposed to Zoloft, and suffered, and will continue to suffer into the future, injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against PEM Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT TEN – STRICT PRODUCTS LIABILITY – FAILURE TO WARN

### *(As Against Wolters Kluwer)*

150.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

151.    The Zoloft prescription drug information, labels, patient education monographs,

- 43 -

Case ID: 110802546

patient inserts, warnings and literature authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied by Wolters Kluwer was defective and unreasonably dangerous when it left PEM Defendant's possession, in that it contained warnings insufficient to alert consumers, including the Plaintiffs, to the dangerous risks associated with Zoloft, including, but not limited to, congenital birth defects.

152.   Plaintiff was administered Zoloft for the drug's intended purpose.  At the time Plaintiff's Zoloft prescription was filled, Plaintiff received and read prescription drug information, labels, patient education monographs, patient inserts, warnings and literature regarding Zoloft that was authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied by Wolters Kluwer.  Upon information and belief, the prescription drug information, labels, patient education monographs, patient inserts, warnings and literature Plaintiff received was supplied to Plaintiff's pharmacy by Wolters Kluwer for the intended purpose of alerting consumers of the risks and side effects of their prescription medications.

153.   Plaintiffs could not have discovered the defects in the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature through the exercise of care.

154.   Wolters Kluwer had a continuing duty to monitor, revise, and amend the content of its Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature to accurately present the dangers associated with Zoloft. Wolters Kluwer failed to adequately warn consumers, including the Plaintiffs, of the dangers associated with Zoloft or that the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature was not a comprehensive or reliable presentation of the drug's dangers.  More specifically, Wolters Kluwer did not adequately warn of the risk of

- 44 -

congenital birth defects that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution, nor did Wolters Kluwer adequately advise Plaintiffs that serious and life-threatening health risks associated with Zoloft had been omitted, such as congenital birth defects, from the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature.  The warnings that were given by PEM Defendant were not truthful, accurate, adequate, useful, appropriate, up-to-date and/or complete.

155.    Wolters Kluwer, as the author and provider of truthful, accurate, adequate, useful, appropriate, up-to-date and complete information and warnings for consumers, is held to the level of knowledge and care of a reasonable PEM provider.

156.    As a direct and proximate result of PEM Defendant's actions and inactions as set forth above, Plaintiffs were exposed to Zoloft, and suffered, and will continue to suffer in the future, injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against the PEM Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT ELEVEN – FRAUD, MISREPRESENTATION AND SUPPRESION

*(As Against Wolters Kluwer)*

157.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

158.    Wolters Kluwer fraudulently, intentionally, and/or negligently misrepresented to the public, and to Plaintiffs, both directly and by and through Plaintiff's pharmacists and physicians, the safety and effectiveness of the drug, and/or fraudulently, intentionally, and/or

Case ID: 110802546

negligently concealed, suppressed, or omitted material, adverse information regarding the safety and effectiveness of the Zoloft.

159.    The intentional and/or negligent misrepresentations and omissions of PEM Defendant regarding the safety and efficacy of Zoloft and of the drug's minimal side effects were communicated to Plaintiffs directly through the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature. provided with Plaintiff's prescription.    The safety and efficacy of Zoloft was also intentionally and/or negligently misrepresented to Plaintiff's pharmacists and physicians with the intent that such misrepresentations would cause Zoloft to be provided and prescribed to Plaintiff.

160.    Wolters Kluwer either knew or should have known that the material representations they were making regarding the Zoloft's safety, efficacy, and minimal side effects were false.

161.    Wolters Kluwer fraudulently, intentionally, and/or negligently made the misrepresentations and/or actively concealed, suppressed, or omitted this material information with the intention and specific desire to induce Plaintiffs, Plaintiff's physician, and the consuming public to prescribe and use Zoloft.    Wolters Kluwer fraudulently, intentionally, and/or negligently, knew or should have known that Plaintiffs, Plaintiff's prescribing physicians, and the consuming public would rely on such material misrepresentations and/or omissions in selecting Zoloft for the treatment of the Mother Plaintiff.    Wolters Kluwer knew or should have known that Plaintiffs and Plaintiff's physicians would rely upon their false representations and/or omissions.

162.    Wolters Kluwer made these misrepresentations and actively concealed adverse information, including the risk of congenital birth defects, at a time when they, their agents and/or their employees knew, or should have known, that the drug product had defects, dangers,

- 46 -

and characteristics that were other than what had been represented to the medical community and the consuming public, including the Plaintiffs herein.   Specifically, Wolters Kluwer misrepresented and/or actively concealed, suppressed, or omitted that there had been inadequate testing of the safety and efficacy of Zoloft, and that prior studies, research, reports, and/or testing had been conducted linking the use of the drug to serious adverse reactions, including congenital birth defects.

163.    Despite the fact that Wolters Kluwer knew or should have known of reports of severe adverse reactions, including congenital birth defects, with Zoloft use, adverse drug information was strategically minimized, understated, or omitted in order to create the overall impression that the dangers were insignificant and infrequent.

164.    The fraudulent, intentional and/or negligent material misrepresentations and/or active concealment, suppression, and omissions by PEM Defendant were perpetuated directly and/or indirectly through the databases, printouts, prescription drug information, labels, patient education monographs, patient inserts, warnings and literature and other information authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied by Wolters Kluwer.

165.    PEM Defendant's material misrepresentations and/or active concealment, suppression, and omissions constitute a continuing tort.

166.    Wolters Kluwer misrepresented the safety and efficacy of Zoloft in its databases, printouts, prescription drug information, labels, patient education monographs, patient inserts, warnings and literature and other information.

167.    If Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians had known the true facts concerning the risks of the use of Zoloft, in particular the risk of congenital birth defects, Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians would not have used, provided, or

Case ID: 110802546

prescribed Zoloft and would have instead sought a safer alternative, or no drug.

168.     Plaintiffs, Plaintiff's pharmacists', and Plaintiff's physicians' reliance upon Wolters Kluwer's material misrepresentations and/or omissions was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning Zoloft while Plaintiff, Plaintiff's pharmacists, and Plaintiff's physicians, were not in a position to know the true facts, and because the PEM Defendant overstated the benefits and safety of Zoloft, and concomitantly downplayed the risks in its use, including congenital birth defects, thereby inducing Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians to use, provided, or prescribe Zoloft,  in lieu of other, safer alternatives.

169.     As a direct and proximate result of PEM Defendant's actions and inactions as set forth above, Plaintiffs were exposed to Zoloft, and suffered, and will continue to suffer in the future, injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against the PEM Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT TWELVE - BREACH OF EXPRESS AND IMPLIED WARRANTIES

*(As Against Wolters Kluwer)*

170.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

171.     Wolters Kluwer, in the marketing, distribution, and sale of products encompassing Zoloft databases, printouts, prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, expressly and impliedly

- 48 -

warranted to Plaintiff, Plaintiff's pharmacists, and Plaintiff's physicians that the information and warnings it was providing was truthful, accurate, adequate, useful, appropriate, up-to-date and complete in order to warn consumers of the dangers and risks of various prescription drugs, including Zoloft.   As the intended and foreseeable recipients of the information contained in the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians were the beneficiaries of the express and implied warranties made by Wolters Kluwer.

172.   Wolters Kluwer, in its prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, expressly warranted to the medical community and consumers that Zoloft was safe and fit for use by Plaintiffs and the general public for the treatment of the conditions suffered by the Mother Plaintiffs.   In actuality, the drug Zoloft was not fit, safe, effective, and proper when prescribed by physicians for human use.

173.   The drug Zoloft, in the composition and condition that it was marketed, distributed, and sold to Plaintiffs was unsafe and unfit for human use so as to be in breach of the express and implied warranties that the drug was fit for its intended purpose.   In particular, by overstating the benefits and safety of Zoloft and by understating other risks attendant to the drug's use, including, but not limited to, congenital birth defects, Wolters Kluwer induced Plaintiff to use Zoloft, in lieu of other, safer alternatives, and induced Plaintiff's pharmacy to dispense Zoloft, and induced Plaintiff's physician to prescribe Zoloft to the Plaintiff.

174.   Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians relied upon the representations of Wolters Kluwer, as contained in the Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, as to the risks of using Zoloft.   In particular, Plaintiff, Plaintiff's pharmacists, and Plaintiff's physicians relied upon Wolters Kluwer's representations and omissions concerning the risk of congenital birth

Case ID: 110802546

defects associated with Zoloft use.

175.    Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians reliance upon Wolters Kluwer's misrepresentations was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who claimed to be providing truthful, accurate, adequate, useful, appropriate, up-to-date and complete drug information. Furthermore, Wolters Kluwer was in a position to know the true facts concerning Zoloft while Plaintiff, Plaintiff's pharmacists, and Plaintiff's physicians were not in a position to know the true facts.

176.    If Plaintiffs, Plaintiff's pharmacists and Plaintiff's physicians had known the true facts concerning the risks of the use of Zoloft, in particular the risk of congenital birth defects, Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians would not have used, provided, or prescribed Zoloft, and would have instead sought a safer alternative.

177.    As a direct and proximate result of PEM Defendant's actions and inactions as set forth above, Plaintiffs were exposed to Zoloft, and suffered, and will continue to suffer in the future, injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against the PEM Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT THIRTEEN - GROSS NEGLIGENCE/MALICE

*(As Against Pfizer and Wolters Kluwer)*

178.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

179.    Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts for gross negligence and/or malice.

Case ID: 110802546

180.   While performing each of the acts and omissions previously set forth in this Complaint, Defendants actually knew of the defective nature of their products and the inadequacy of their warnings as set forth herein, yet Defendants continued to author, create, design, distribute edit, manufacture, market, sell and provide their products in their defective condition so as to maximize sales and profits at the expense of Plaintiffs' health and the health of the consuming public.

181.   The acts and omissions of Pfizer and Wolters Kluwer involved an extreme degree of risk, given the probability and magnitude of causing harm to Plaintiffs and others.

182.   Pfizer and Wolters Kluwer had actual, subjective awareness of the risk of injury posed by Zoloft and the Zoloft information and warnings, to consumers such as Plaintiffs. Moreover, a reasonable company in the position of the Defendants would have been aware of the risk of injury posed to consumers by the use of Zoloft and the Zoloft information and warnings. Yet, Pfizer and Wolters Kluwer proceeded in conscious disregard to the rights, safety, and welfare of Plaintiffs.

183.   The acts and omissions of Pfizer and Wolters Kluwer demonstrate that they did not care about the peril they subjected upon Plaintiffs such that their conduct was grossly negligent.

184.   Further, the wrongs done by the Defendants were aggravated by the kind of malice, fraud, and reckless disregard for the rights of others, the public, and Plaintiffs for which the law allows the imposition of exemplary damages in that the Defendants' conduct:

> a)   when viewed objectively from the Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and the Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; and/or

- 51 -

     b)    included a material representation that was false, with the Defendants knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiffs. Plaintiffs relied on the representation and suffered injury as a proximate result of this reliance.

185.    Plaintiffs therefore seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

186.    Plaintiffs also allege that the acts and omissions of the Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiffs. In that regard, Plaintiffs will seek exemplary damages in an amount that would punish the Defendants for their conduct and which would deter other similar defendants from engaging in such misconduct in the future.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against the Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT FOURTEEN - LOSS OF CONSORTIUM AND PECUNIARY LOSS

*(As Against Pfizer and Wolters Kluwer)*

187.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

188.    The Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts.

189.    As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiffs were exposed to Zoloft and the Parent Plaintiffs have suffered, and will continue to suffer, the past and future injuries, damages, and losses as a result of the Infant Plaintiff's injuries, as set forth herein.

Case ID: 110802546

190.    The Defendants are liable to Parent Plaintiffs for all general, special, and punitive damages, delay damages, and other relief to which they are entitled by law.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against the Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT FIFTEEN – PUNITIVE DAMAGES

*(As Against Pfizer and Wolters Kluwer)*

191.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

192.    Plaintiffs are entitled to punitive damages, pursuant to state common law or the applicable statutory provision, because the Defendants' actions were reckless and without regard for the public's safety and welfare.   The Defendants knowingly withheld, concealed or misrepresented the risks and dangers of Zoloft and the Zoloft information and warnings, including the risk of congenital birth defects, from both the medical community and the public at large, including Plaintiffs, their physicians and pharmacists.   The Defendants downplayed, understated, and disregarded their knowledge of the serious and permanent side effects associated with the use of Zoloft, including congenital birth defects, despite information demonstrating Zoloft was unreasonably dangerous and in conscious disregard of the risk of serious injury posed to Plaintiffs by these known misrepresentations and/or omissions.

Case ID: 110802546

193.    Plaintiffs are entitled to punitive damages, pursuant to state common law or the applicable statutory provision, because Defendants' actions were reckless and without regard for the public's safety and welfare.  Defendants misled both the medical community and the public at large, including Plaintiffs, their physicians and pharmacists, by making false representations about and concealing pertinent information regarding Zoloft and its information and warnings. Defendants downplayed, understated and disregarded its knowledge of the serious and permanent side effects associated with the use of Zoloft, including congenital birth defects, despite information demonstrating the product was unreasonably dangerous.

194.    At all times material hereto, the Manufacturing Defendant had a duty to exercise reasonable care in the advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and/or testing Zoloft.

195.    The conduct of the Manufacturing Defendant in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and/or testing Zoloft, and in failing to warn Plaintiffs, the Mother's Plaintiff physicians, pharmacists and other members of the public of the dangers inherent in the use of Zoloft, which were known to the Defendants, was attended by circumstances of fraud, malice, or willful and wanton conduct, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, including Plaintiffs.

Case ID: 110802546

196.    The Manufacturing Defendant knew that Zoloft had unreasonably dangerous risks and caused serious side effects of which Plaintiffs, their physicians and pharmacists would not be aware. The Defendants nevertheless advertised, analyzed, assembled, compounded, designed, developed, distributed, formulated, inspected, labeled, manufactured, marketed, packaged, produced, promoted, processed, researched, sold, and tested Zoloft knowing that there were safer methods and products available.

197.    At all times material hereto, the PEM Defendant had a duty to exercise reasonable care in the authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, publishing and supplying Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature.

198.    The conduct of the PEM Defendant in authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, publishing and supplying Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, and in failing to warn Plaintiffs, the Mother's Plaintiff physicians, pharmacists and other members of the public of the dangers inherent in the use of Zoloft, which were known to the Defendants, was attended by circumstances of fraud, malice, or willful and wanton conduct, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, including Plaintiffs.

199.    The PEM Defendant knew that Zoloft had unreasonably dangerous risks and caused serious side effects of which Plaintiffs, their physicians and pharmacists would not be aware. The Defendants nevertheless authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied Zoloft prescription drug information, labels, patient education monographs, patient inserts, warnings and literature knowing that there were safer methods and products available.

- 55 -

200.   The Defendants' actions were performed willfully, deliberately, intentionally, and with reckless disregard for the rights and safety of Plaintiffs and the public and caused substantial financial injury.

201.   The conduct of the Defendants, undertaken with knowledge, for these purposes, evinces gross negligence and a willful, wanton, and conscious disregard for the rights and safety of consumers, including the Plaintiffs, and as a direct and proximate result of the Defendants' actions and inactions, Plaintiffs suffered injuries due to Defendants' disregard for Plaintiffs' rights and safety, and therefore, Plaintiffs are entitled to an award of punitive damages from Pfizer and Wolters Kluwer.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against the Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## V.   <u>JURY DEMAND</u>

202.   Plaintiffs demand that all issues of fact in this case be tried to a properly empanelled jury.

## VI.   <u>CONCLUSION AND PRAYER</u>

**WHEREFORE**, Plaintiffs request trial by jury and that the Court grants them the following relief against the Defendants, on all counts of this Complaint, including:

(A)   Money Damages representing fair, just, and reasonable compensation for their respective common law and statutory claims in excess of $50,000.00;

(B)   Lost Wages;

(C)   Punitive and/or Treble Damages pursuant to state law;

(D)   Attorneys' fees pursuant to state law;

- 56 -

(E)     Pre-judgment and post-judgment interests as authorized by law on the judgments

        which enter on Plaintiffs' behalf;

(F)     Costs of suit and expenses;

(G)     Delay Damages; and

(H)     Such other relief as is deemed just and appropriate.

                        Respectfully Submitted,

                        _/s/__Rosemary Pinto_____
                        Rosemary Pinto, Esq.
                        Pa. Bar No. 53114
                        RPinto@feldmanpinto.com
                        **FELDMAN & PINTO**
                        1604 Locus St, FL 2R
                        Philadelphia, PA  19103
                        Telephone: 215- 546-4385

Case ID: 110802546

## Attorney's Verification

I, Rosemary Pinto, Esquire, hereby state:

1.     I am one of the Plaintiff's Attorneys in this action.

2.     I submit that, pursuant to Pa. R.C.P. No. 1024, I am a person having sufficient knowledge and belief to verify this pleading.

3.     Plaintiff is outside the jurisdiction of this Court and the verifications cannot be obtained within the time allowed for filing.

4.     I verify that the statements made in the foregoing Civil Action Complaint are true and correct to the best of my knowledge, information and belief; and

5.     I understand that the statements in said Civil Action Complaint are subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

_____/s/ ROSEMARY PINTO

Date:   September 30, 2011

Case ID: 110802546

**Feldman & Pinto**
By: Rosemary Pinto, Esquire
Attorney ID Number: 53114
1604 Locust Street, 2R
Philadelphia, PA 19103
Office : (215) 546-2604
Facsimile (215) 546-9904
Email: rpinto@feldmanpinto.com



| | | |
|---|---|---|
| VERONICA MARTINEZ, a minor by | : | COURT OF COMMON PLEAS |
| APRIL MONTOYA, Guardian and | : | PHILADELPHIA COUNTY |
| APRIL MONTOYA, Individually | : | |
| | : | |
| vs. | : | AUGUST TERM, 2011 |
| | : | |
| WOLTERS KLUWER HEALTH, INC. | : | NO: 002546 |
| WOLTERS KLUWER UNITED STATES, INC. | : | |
| PFIZER, INC. | : | |

## PRAECIPE TO REINSTATE COMPLAINT

TO THE PROTHONOTARY:

Kindly reinstate the Complaint in the above matter for an additional thirty (30) days.

Feldman & Pinto

By:___/s/ Rosemary Pinto_____
Rosemary Pinto
Attorney for Plaintiff

Dated: November 2, 2011

Case ID: 110802546