**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VERONICA MARTINEZ, a minor, | ) | |
| by APRIL MONTOYA, Guardian, | ) | |
| and APRIL MONTOYA, Individually | ) | |
| Plaintiffs, | ) | |
| | ) | No. 2:11-CV-07427-JCJ |
| v. | ) | |
| | ) | Honorable J. Curtis Joyner, Chief Judge |
| WOLTERS KLUWER HEALTH, INC., | ) | |
| WOLTERS KLUWER UNITED STATES | ) | |
| INC. and PFIZER, INC. | ) | |
| Defendants. | ) | |

**DEFENDANTS WOLTERS KLUWER HEALTH, INC. AND WOLTERS KLUWER**
**UNITED STATES INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

**INTRODUCTION**

This lawsuit threatens to turn the Constitutionally protected written word into just another "product" subject to mass tort challenges in the Philadelphia Court of Common Pleas. The claims fail as a matter of law. Plaintiffs suggest that defendant Wolters Kluwer Health, Inc. ("WKH"), an independent publishing company, should be liable in tort, like a drug manufacturer or healthcare provider, to any individual plaintiff who suffered an adverse effect not mentioned in the generalized summary drug information it publishes. That generalized summary information is distilled primarily from a drug manufacturer's FDA-approved package insert and written in plain-English. A pharmacist can license the information directly or indirectly from WKH and use it to print a patient education monograph ("monograph"), which is designed to reinforce oral counseling to a patient about how to use a drug safely. WKH does not have any relationship to defendant Pfizer, Inc. ("Pfizer"), the maker of Zoloft, and does not have any involvement in the process of developing, manufacturing or marketing Zoloft.

Courts that have reviewed similar claims on their merits have unambiguously found that a patient education monograph publisher, like WKH, owes no legal duty to individual patients. *Wilkow v. Drug Fair, Inc.*, No. L-2137-98, 1999 WL 33645139 (N.J. Super. Ct. Oct. 22, 1999) (attached as Ex. B); *Cheatham v. Teva Pharm. USA*, 726 F. Supp. 2d 1021 (E.D. Ark. 2010) (attached as Ex. C); *Rivera v. First DataBank, Inc.*, 187 Cal. Rptr. 3d 1, (Cal. Ct. App. 2010) (attached as Ex. D); *Lewis v. Kmart Corp.*, No. 1:09-CV-1448-RLV, tr. p. 6, fn. 1 (N.D. Ga. Jul. 21, 2011) (attached as Ex. E.)  There is no basis under either New Mexico or Pennsylvania law to treat Plaintiffs' claims here differently.  Plaintiffs cannot avoid this result with vague claims WKH somehow voluntarily assumed a duty to provide them with comprehensive individualized information about Zoloft.  Moreover, the First Amendment to the United States Constitution protects the information published by WKH from legal challenges to its content.  In the absence of such protections, publishers of generalized information would be subject to almost limitless liability to readers who claim to have suffered some injury because the content was "inadequate."

In addition to these foundational legal deficiencies, the Complaint does not allege facts sufficient to state a claim against WKH for negligence, products liability, or breach of warranty, let alone fraud.  All of the claims against WKH are premised on information that it published in a written monograph, but Plaintiffs *never* allege what the monograph said, what it purportedly should have said, or why April Montoya allegedly relied on a generalized summary to provide "complete" information about possible side-effects associated with Zoloft.  In fact, the WKH Zoloft monograph explicitly states that it does not contain all information regarding potential adverse effects associated with Zoloft, and a patient should direct questions about the drug to her doctor or pharmacist.  Plaintiffs also fail to allege any facts showing the existence of the kind of

relationship between April Montoya or her pharmacy and WKH sufficient to show a legal duty.

Plaintiffs further fail to allege facts showing that WKH had knowledge of or even access to any

information about Zoloft's potential risks that it failed to include in its monograph.  These

pleading deficiencies alone are enough to require dismissal of the claims against WKH.

Finally, Plaintiffs claims against defendant Wolters Kluwer United States Inc. ("WKUS")

fail because Plaintiffs do not and cannot allege in good faith that WKUS had any involvement in

the facts alleged in the Complaint.  In fact, WKUS is a separate legal entity that is not involved

in the publication of drug information.  Plaintiffs cannot meet their pleading burden by simply

identifying WKUS as a party, referring to it collectively with WKH, and indiscriminately

lumping both entities into the allegations of the Complaint.

Because Plaintiffs cannot state a claim against WKH or WKUS based upon any facts they

allege or could have alleged, those claims should be dismissed.

## BACKGROUND

### A.     <u>Plaintiffs' Alleged Injuries</u>

Veronica Martinez, a minor, and her mother, April Montoya, commenced this action in

the Philadelphia Court of Common Pleas on August 15, 2011 by way of a Summons.  They then

filed a Complaint on September 30, 2011.  The Complaint alleges that Veronica Martinez was

born on March 31, 2006, with congenital birth defects, clubbed foot (right foot) and other related

conditions as a result of her mother's ingestion of Zoloft.  (*See* Complaint attached hereto as Ex.

A at ¶ 4.)  Plaintiffs seek to recover medical and other expenses related to treatment resulting

from Veronica Martinez's birth defects.  (*Id.* ¶ 5.)

**B.**     <u>Plaintiffs' Allegations Against Pfizer</u>

The Complaint asserts negligence, strict liability, fraud, breach of warranty and other related claims against Pfizer, Zoloft's manufacturer.  Plaintiffs allege that Zoloft was first approved for use by the FDA in 1991 for the treatment of major depression.  (*Id.* ¶ 25.)  Pfizer performed bioavailability, clinical and animal studies following the approval of its New Drug Application for Zoloft.  (*Id.* ¶ 26.)  Plaintiffs claim that Pfizer had access to information and failed to warn of the risks "associated with Zoloft's use during pregnancy" including "children being born with congenital birth defects, heart defects, PPHN and other similar conditions to women who took Zoloft during pregnancy."  (*Id.* ¶¶ 29-30.)

Specifically, Pfizer allegedly received information from "preclinical studies and the subsequent published studies confirming these risks."  (*Id.* ¶ 30.)  Plaintiffs claim that Pfizer failed to "fully, truthfully and accurately disclose Zoloft data to the FDA, the Plaintiffs and the Mother Plaintiff's physicians."  (*Id.* ¶ 32.)  Instead, Pfizer purportedly "represented to physicians that Zoloft was safe for use by women of childbearing years and their unborn children."  (*Id.* ¶ 36.)  Plaintiffs allege that Pfizer failed to adequately disclose the increased risk of congenital birth defects, and "never approached the FDA to alter the label for Zoloft so that it properly and adequately warned of the risks of birth defects associated with the drug."  (*Id.* ¶¶ 36-38, 40, 42.)

**C.**     <u>Plaintiffs' Allegations Against WKH</u>

WKH is in the business of publishing various types of drug information to healthcare professionals, including pharmacies.  (*Id.* ¶ 44.)  Among the types of information published by WKH is a database of patient education monographs that a pharmacist can use to print a summary of information about a drug, including certain potential side effects, to support Plaintiffs' physicians and pharmacist's counseling to the patient about safe drug use.  (*Id.* ¶¶ 45,

51, 55.)  WKH is not alleged to have any involvement in the process of developing,

manufacturing or marketing Zoloft.

    Plaintiff April Montoya alleges that she filled her prescription for Zoloft at unidentified

"Plaintiffs' pharmacies", which provided her with a Zoloft monograph published by WKH.  (*Id.*

¶¶ 44-55.)  Plaintiffs allege that they were harmed due to their reliance on information and

warnings provided by WKH, but they fail to identify what portion, if any, of the monograph was

deficient.  (*Id.* ¶¶ 53, 55.)  Plaintiffs do not attach a copy of the Zoloft monograph she allegedly

received or even paraphrase anything the monograph said about potential side effects associated

with the drug.  (*See id.* ¶ 44, 46-55.)  Instead, Plaintiffs repeat the refrain that WKH:

> breached [its] duty of care, by directly or indirectly, negligently and/or
> defectively, authoring, analyzing, creating, compiling, designing, drafting,
> disseminating, distributing, editing, evaluating, marketing, modifying, publishing
> and supplying prescription drug information, labels, patient education
> monographs, patient inserts, warnings and literature that were unsuitable for their
> intended purpose of warning consumers about the risks and side effects of Zoloft,
> particularly the risks and side effects relating to congenital birth defects.

(*See, e.g., id.* ¶ 49.)  The "how" and "why" are entirely missing from the Complaint.  Plaintiffs

further claim that WKH knew that "incomplete, inaccurate and misleading information and

warnings disseminated in their drug information, labels, patient education monographs, patient

inserts, warnings and literature for Zoloft . . ." (*Id.* ¶¶ 50, 51.)  Yet, Plaintiffs never identify any

warning that was inaccurate or insufficient, and they fail to allege facts showing that WKH could

have known information that Pfizer was hiding from the FDA and the medical community.

    Plaintiffs also claim that WKH's monograph provides "comprehensive, authoritative, and

unbiased presentation of key drug information to customers and patients."  (*Id.* ¶ 53.)  Plaintiffs

cite to WKH's website as the basis for failure to ensure "truthful, accurate, adequate, useful, up-

to-date and complete" drug information "that consumers, including the Plaintiff herein, could

foreseeably suffer harm because of their reliance on the PEM Defendant's undertaking to

4

provide information and warnings about Zoloft." (*Id.* ¶ 52.)  But Plaintiffs do not explain how anyone could reasonably rely on summary information to provide a "complete" list of side-effects.

**D.**     **Plaintiffs' Allegations Against WKUS**

Plaintiffs do not and cannot in good faith allege that WKUS had any involvement in the conduct allegedly giving rise to their claims because WKUS is not engaged in the business of publishing drug information.  WKH is the only Wolters Kluwer entity that publishes the patient education monographs at issue in this matter.  Further, WKUS does not have any ownership interest in and is not owned by WKH.

Plaintiffs make no allegations specific to the involvement of WKUS in their complaint. Instead, Plaintiffs simply identify WKUS "upon information and belief" as "the nerve center of "WOLTERS KLUWER UNITED STATES, INC.'S business as it is the site of the corporation's headquarters and the place where the corporation's officer direct, control, and coordinate the corporation's activities." (*Id.* ¶ 9.) This conclusory statement about a corporate entity controlling itself does not make any sense, let alone show that WKUS is a proper party here.  Plaintiffs go on to baldly claim that they will refer to WKH and WKUS collectively as "Wolters Kluwer" or the "PEM Defendant" throughout the remainder of the Complaint.  (*Id.* ¶ 11.)  There are no other allegations anywhere in the Complaint that identify any specific role that WKUS had in publishing the Zoloft monograph information at issue.

**STANDARD OF REVIEW**

The United States Supreme Court has determined what district courts must look for when evaluating a complaint that is challenged under Rule 12(b)(6) and Rule 8 of the Federal Rules of

5

Civil Procedure. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atlantic*

*Corp. v. Twombly*, 550 US 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  As explained *Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556-57, 570, 127 S. Ct. at 1965-66, 1974, 167 L.

Ed. 2d 929).  The *Iqbal* court explained, "[T]he tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.*

Moreover, Rule 8(a) of the Federal Rules of Civil Procedure "does not unlock the doors

of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 1950. To comply

with Rule 8, the complaint must provide "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Moreover, the

pleading must contain something more than a statement of facts that "merely creates a suspicion

[of] a legally cognizable right of action." *Id.* at 555.  Instead a court must "draw on its judicial

experience and common sense" in making a "context specific" determination as to whether a

complaint states a plausible claim for relief.  *Id.*  A court considering a motion to dismiss can

look for pleadings that are not entitled to an assumption of truth because they are no more than

conclusions.  *Id.*  Legal conclusions lacking supporting factual allegations are not well-pleaded.

*Id.*

**CHOICE OF LAW**

Plaintiffs allege that they are citizens and residents of New Mexico.  (Compl. ¶ 3.)  As such, Ms. Montoya likely filled her prescription for Zoloft in New Mexico and the alleged injuries suffered by her daughter presumably occurred in New Mexico.  As such New Mexico law governs the Plaintiffs' substantive claims.  Even if the Court analyzes Plaintiffs claims under Pennsylvania law, however, the result is the same.

**ARGUMENT**

I.   **Plaintiffs Cannot State A Claim Against WKH Under Any Set Of Facts.**

    A.   **Plaintiffs Must Show A Relationship With WKH Sufficient To Create A Legal Duty.**

The primary element in any negligence cause of action is that the defendant owes a duty of care to the Plaintiffs.  *See Gibbs v. Ernst*, 647 A.2d 882, 890 (1994) ("Any action in negligence is premised on the existence of a duty owed by one party to another"); *See Herrera v. Quality Pontiac*, 2003 NMSC 18, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (2003); *Stark-Romero v. AMTRAK Co.*, 2011 U.S. Dist. LEXIS 95203 (D.N.M. Aug. 8, 2011) (attached as Ex. F); *Schear v. Board of County Comm'rs*, 101 N.M. 671, 672 (N.M. 1984) ("A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant.") (attached as Ex. G). In both New Mexico and Pennsylvania, the relationship between the parties is a primary factor in determining whether a duty exists.  *See, e.g., Althaus v. Cohen,* 756 A.2d 1166, 1169 (Pa. 2000); *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 108 N.M. 84, 89 (N.M. Ct. App. 1988) (The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation is shown as gives rise to such duty) (attached as Ex. H).   The question of whether WKH owes a duty of care to the Plaintiffs is a question of law for the court.  *Schear v.*

*Board of County Comm'rs*, 101 N.M. 671 (N.M. 1984) (Ex. G); *Brisbine v. Outside In Sch. of*

*Experimental Educ., Inc.*, 799 A.2d 89, 95 (Pa. Super. 2002).

In determining the existence of a duty, New Mexico courts:

[L]ook at the relationship of the parties, the nature of the plaintiff's interest and
the defendant's conduct, and the public policy in imposing a duty on the
defendant. . . . We look at both foreseeability and whether the obligation of the
defendant is one to which the law will give recognition and effect . . . The
assessment of foreseeability takes into account community moral norms and
policy views, tempered and enriched by experience, and subject to the
requirements of maintaining a reliable, predictable, and consistent body of law.

*Johnstone v. City of Albuquerque*, 145 P.3d 76, 80 (N.M. Ct. App. 2006); *Schear v. Bd. of*

*County Comm'rs*, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984) (citations omitted) (Ex. G);

*accord Solon v. WEK Drilling Co.*, 113 N.M. 566, 571, 829 P.2d 645, 650 (1992) ("It is

thoroughly settled in New Mexico, of course, that whether the defendant owes a duty to the

plaintiff is a question of law.").  Determining whether a duty exists necessarily requires that the

court assess whether the relationship between the parties is such that the defendant was under a

duty or obligation to use some care to avoid injury to the plaintiffs. *Parker v. E.I. DuPont de*

*Nemours & Co.*, 121 N.M. 120, 125 (N.M. Ct. App. 1995) (attached as Ex. I).  To impose a duty,

a relationship must exist that legally obligates Defendant to protect Plaintiff's interest. *See*

*Calkins v. Cox Estates*, 110 N.M. 59, 62, 792 P.2d 36, 39 (1990) (attached as Ex. J).

Here, April Montoya fails to allege that she had any relationship with WKH whatsoever,

and as a result there cannot have been a duty from WKH to Plaintiffs.  She also fails to allege

how WKH, a publisher that supplied information to Plaintiffs' pharmacy, could have possessed

any knowledge about her sufficient to give rise to a duty.   Instead, Plaintiffs try to concoct a

legal duty by bootstrapping together the relationship between WKH and Plaintiffs' independent

relationship with Plaintiffs' unidentified "pharmacies" (Complaint at 47.) Even if Plaintiffs had

alleged any facts whatsoever about the former relationship, which they do not, these independent

relationships cannot give rise to any legal duty between WKH and the Plaintiffs.

**B.     The Law Is Clear That Monograph Publishers Owe No Duty To Individual Patients.**

Courts that have reviewed similar claims on their merits have unambiguously found that

individual plaintiffs cannot state a claim for alleged deficiencies in a patient education

monograph against a publisher like WKH.  *Wilkow v. Drug Fair, Inc.,* No. L-2137-98, 1999 WL

33645139 (N.J. Super. Ct. Oct. 22, 1999) (Ex. B); *Cheatham v. Teva Pharm. USA*, 726 F. Supp.

2d 1021 (E.D. Ark. 2010) (Ex. C); *Rivera v. First DataBank, Inc*., 187 Cal. Rptr. 3d 1, (Cal. Ct.

App. 2010) (Ex. D).

In *Wilkow*, a New Jersey court rejected a plaintiff's claim that Medi-Span, the same

WKH business at issue here, owed individual patients any duty in connection with published

information in a monograph.  1999 WL 33645139 (N.J. Super. Ct. Oct. 22, 1999) (See Ex. B).

Like Plaintiffs here, the plaintiff in *Wilkow* alleged that a monograph was deficient because it did

not include a particular warning about taking a drug on an empty stomach.  The court explained,

"I frankly cannot find a duty between Medi, Medi-span, Inc. and the Plaintiff in this particular

case.  I see no, no relationship that would, under cases that Counsel cited, create a duty.  If I were

to create a duty, I would, by creating a duty here I would be creating a body of cases that would,

that would create duties in very tenuous situations, and I find this is a tenuous situation." *Id.*, tr.

at 9 (emphasis added).  The court also noted that the plaintiff was "probably better off going after

the person who caused the harm [the pharmacist] rather than trying to shotgun against other

people." *Id.* at 9.

Similarly, in *Cheatham v. Teva Pharm. USA*, the court rejected a plaintiff's claim that

WKH had a legal duty to disclose additional side effect information in its monograph for the

drug Tramadol.  726 F. Supp. 2d at 1022 (See Ex. C).  Unlike Plaintiffs here, the plaintiff in

*Cheatham* attached a copy of the monograph she received from her pharmacy.  *Id.* at 1023, fn.

10.  The court began its analysis by acknowledging WKH's limited role in connection with the

prescription at issue.  First, WKH was in a different position than the plaintiff's pharmacist, who

was required by state pharmacy regulations to provide patient counseling, including information

about dosage, potential significant side effects and drug interactions when filling a prescription.

*Id*. at 1022-23.  The court then noted that, "WKH had nothing to do with the manufacture,

distribution, or testing of Tramadol."  *Id*. at 1022; *see also Rivera*, 115 Cal. Rptr. at 8

(monograph publisher is not a manufacturer that has a duty to publish warnings required by the

FDA) (See Ex. D).  Instead, WKH's role is limited to providing pharmacies with "generalized,

summary information about prescription drugs for use by pharmacists in their provision of

counseling to patients regarding prescribed drugs and the use of such drugs as directed by their

physicians."  *Id*.; *see also* 115 Cal. Rptr. at 8 (the monograph is a summary of important

information about a drug that is intended as a supplement to the manufacturer's package insert).

Unlike the pharmacist, "WKH had no direct relationship to Geri Cheatham . . . [or her]

individual circumstances and that it made no effort to provide her with a detailed or

individualized warning regarding the drug prescribed by her physician and obtained from USA

drug."  *Id*. at 1023.

The court specifically found that WKH's undertaking to provide patient drug information

to plaintiff's pharmacy did not create any duty to plaintiff.  *Id*. at 1024.  The court further found

that plaintiff could not show that WKH voluntarily assumed any duty to her because: 1) the

monograph included a disclaimer that it was "not intended to cover all possible uses, directions,

precautions, drug interactions, or adverse effects" or to be used as specific medical advice;" 2)

10

"there was nothing extensive or detailed about the generic information provided in the monograph;" and 3) "there is no basis for concluding that the monograph was intended to supplant either Geri Cheatham's physician's warnings regarding the prescribed medication or the pharmacist's duties in connection with filling the prescription." *Id.*; *see also Lewis v. Kmart Corp.*, No. 1:09-CV-1448-RLV, tr. p. 6, fn. 1 (N.D. Ga. Jul. 21, 2011) ("The learned intermediary doctrine prevents the fourth-party defendant [WKH] from being liable based on its failure to warn the plaintiff of the dangers involved with the drug.") (attached as Ex. E.).

### C.    WKH's Monographs Are Protected By The First Amendment.

In addition, the First Amendment precludes claims against publishers of information for a general audience.  In *Smith v. Linn*, 48 Pa. D. & C. 3d 339 (Pa. Com. Pl. 1988), the plaintiff brought negligence, conscious and negligent misrepresentation, strict products liability, breach of warranty and intentional infliction of emotional distress claims against the publisher of a diet book based on allegations that the book contained misinformation that caused the death of plaintiff's spouse.  The court granted summary judgment to the publisher on all counts, finding that a publisher owes "no duty to the members of the general public with respect to the contents of one of its publications.  The court noted that its decision "rests squarely on the mandates of the First Amendment."  *Id.* at 351.  The court went on to explain,

> In practicality, allowing publishers to be sued for negligent publication and misrepresentation would open a Pandora's box for publisher's liability suits.  The chilling effect of such a decision on free speech militates against the imposition of liability in this case.  Placing publishers in fear of civil liability of an untold magnitude for publishing controversial, dangerous or even potentially harmful ideas would stifle the publication, broadcast and exchange of all but the most simplistic material.

*Id.* at 351-52, *affirmed* 563 A.2d 123, 126 (Pa. Super. Ct. 1989).  Thus, there is no cause of action against a publisher for negligent publication or misrepresentation[.]"  *Id.* at 351.

11

The United States Supreme Court has **never** allowed a claim against a publisher based on truthful speech on a matter of public concern. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491 (1975); *Okla. Publ'g Co. v. District Court*, 430 U.S. 308, 310 (1975); *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829 (1978) ; *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 102 (1979); *Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989); *see also Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("'[S]tate action to punish the publication of truthful information seldom can satisfy constitutional standards.'") (quotation omitted); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (protecting publishers' editorial judgments) (citation and internal quotation omitted).  This is particularly applicable here where Plaintiffs do not allege that the WKH monograph was somehow untrue, but rather that it was "incomplete."

Other courts across the country have similarly held as a matter of course that publishers, like WKH, are entitled to full First Amendment protection, which precludes liability for non-defamatory information that is alleged to be negligent. *See, e.g.*, *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 327-28 (S.D.N.Y. 2006) (Book was non-commercial speech entitled to First Amendment protection); *Lacoff v. Buena Vista Pub., Inc.*, 705 N.Y.S.2d 183, 187 (N.Y. App. Div. 2000); *Reynolds v. Murphy*, 188 S.W. 3d 252, 263-65 (Tx. App. Ct. 2006) (investment newsletter of general circulations was entitled to First Amendment protection from negligence claims); *Ginsburg v. Agora, Inc.* 915 F. Supp. 733, 738-40 (D. Md. 1995) (dismissing, on First Amendment grounds, negligence claims against author and publisher of an investment newsletter that turned out to be based on inaccurate assumptions); *Waters v. TSR, Inc.*, 715 F. Supp. 819, 822 (W.D. Ky. 1989) ("the First Amendment prohibits imposition of liability on TSR based upon the content of the game"); *Daniel v. Dow Jones & Co., Inc.*, 520 N.Y.S. 2d 334, 339 (Civ. Ct. 1987) ("The First Amendment precludes the imposition of liability for non-defamatory,

negligently untruthful news."). Indeed, courts have dismissed claims in this regard out of respect

for the value that society places on the free exchange of ideas. "To preserve society's overriding

interested in the untrammeled dissemination of knowledge and free expression, the First

Amendment strictly limits the imposition of liability on publishers for the contents of books."

*Lacoff*, 705 N.Y.S.2d at 187.[1]

Given that Plaintiffs do not claim that any of the information published by WKH was

false, but rather that WKH should have published additional information, the precedent above

clearly protects WKH from liability for their truthful speech.

### D. Fraudulent Joinder Cases Do Not Support Plaintiffs' Claims Against WKH.

Plaintiffs will likely cite to a few federal court decisions that remanded claims against

monograph publishers to state court. None of these decisions affirmatively recognizes a cause of

action against a monograph publisher. For example, in *Robinson v. Wolters Kluwer Health, Inc.*,

*et al.,* 2011 U.S. Dist. LEXIS 138597 (E.D. Pa. Dec. 2, 2011) and *Slater v. Hoffman-LaRoche*

*Inc.*, No. 10-6956, 2011 WL 1087240 (E.D. Pa. Mar. 25, 2011), this court remanded the

plaintiffs' claims to state court without addressing WKH's pending motions to dismiss. In so

doing, the court expressly recognized that the fraudulent joinder standard is not the same as the

standard for ruling on a motion to dismiss. The fraudulent joinder standard looks only at

whether the plaintiff's claim was "wholly insubstantial and frivolous." *Slater*, 2011 WL

1087240, at *3. Furthermore, a motion to dismiss and a motion to remand can be decided

simultaneously. See *Uon v. Tanabe Int'l Co.*, No. 10-5185, 2010 WL 4946681, at *2, fn. 3 (E.D.

---

[1]     Many other courts have expressed similar concerns. *See, e.g.*, *Bauer* at 822-23. ("More
importantly perhaps, the danger of plaintiff's proposed theory is the chilling effect it would have
on the First Amendment-Freedoms of Speech and Press. Would any author wish to be exposed to
liability for writing on a topic which might result in physical injury? E.g., how to cut trees; how
to keep bees?").

Pa., Dec. 3, 2010) Even though the *Slater* and *Robinson* courts chose to remand without considering WKH's Motion to Dismiss', in light of the important First amendment issues WKH respectfully requests this Court rule on its Motion to Dismiss.

**E.     Plaintiffs Cannot Show That WKH Voluntarily Assumed Any Duty.**

There is no basis in the allegations of the Complaint, or any facts that Plaintiffs could have alleged, to find that WKH voluntarily assumed a duty to the Plaintiffs.  First, Plaintiffs do not and cannot allege that WKH had any communications, let alone any agreement, with them.  Second, on its face, the monograph expressly disclaims any undertaking to provide complete information regarding possible side effects, stating:

> The information in this monograph is not intended to cover all possible uses, directions, precautions, drug interactions, or adverse effects.  This information is generalized and is not intended as specific medical advice.  If you have questions about the medicines you are taking or would like more information, check with your doctor, pharmacist or nurse.

*See Cheatham*, 726 F. Supp. 2d at 1024.  In fact, the very idea that a publisher of summary information assumes a duty to provide "complete" information is contradictory on its face.

Plaintiffs seek to concoct a voluntarily assumed duty by pointing to Restatement § 324A, the "Good Samaritan" section, that concerns voluntarily assumed duties.  But this section only applies to situations in which a defendant intercedes in a manner "necessary to the safety" of a plaintiff and then **affirmatively increases** the risk of harm to that plaintiff, such as when a doctor stops at the roadside to assist an injured motorist and then compounds the injury.

The publication of supplemental summary drug information does not fit within this concept as a matter of law, especially where Plaintiffs claim is simply that the information was not sufficiently detailed.  Courts have rejected voluntary assumed duties in this exactly this situation.  The New Mexico Court of Appeals stated that "[a] manufacturer of a product . . . which is obtainable only through the services of a physician, fulfills its duty if it warns the

physician of the dangers attendant upon its use, and need not warn the patient as well." *Perfetti v. McGhan Medical*, 99 N.M. 645, 649 (Ct. App. 1983)(attached as Ex. K); *Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d 1174, 1191 (D.N.M. 2008) (attached as Ex. L).  The learned intermediary doctrine states that once a manufacturer warns a doctor about a drug's inherent dangers, it has fulfilled its legal duty to provide a warning. *See Wright v. Abbott Labs., Inc.*, 259 F.3d 1226 (10th Cir. Kan. 2001); *Hall v. Merck, Sharp & Dohme*, 774 F. Supp. 604, 605-06 (D.Kan.1991) (granting summary judgment to a drug manufacturer because it discharged its legal duty to plaintiff by warning prescribing physician of drug's inherent risks); *Phelps v. Sherwood Med. Indus.*, 836 F.2d 296, 301-03 (7th Cir.1987). "[N]o one is bound to guard against or take measures to avert that which he [or she] would not reasonably anticipate as likely to happen." *Herrera v. Quality Pontiac*, 134 N.M. 43 (N.M. 2003) (internal quotation marks and citation omitted).

Simply stating that WKH "authored, analyzed, created, complied, designed, drafted, disseminated, distributed, edited, evaluated, marketed, modified, published and supplied drug information, labels, patient education monographs, patient inserts, warnings and literature" is not sufficient to show that WKH voluntarily assumed any duty to the Plaintiffs.  (Compl.¶¶ 46, 48.)

Moreover, Plaintiffs cannot show any voluntarily assumed duties arising from an agreement between WKH and unidentified Plaintiffs' pharmacies.  In fact, the Complaint alleges absolutely nothing about the nature or scope of that agreement, let alone facts showing any voluntarily assumed duty by WKH to unidentified Plaintiffs' pharmacies.

**II.    Plaintiffs' Cannot State Claims for Products Liability, Fraud or Breach of Warranty Claims Against WKH**

    **A.    Plaintiffs' Products Liability Claim Is Deficient.**

      The Third Circuit has explained that "federal courts sitting in diversity and applying Pennsylvania law to products liability cases should look to sections 1 and 2 of the Restatement (Third) of Torts." *Covell v. Bell Sports, Inc.,* 2011 U.S. App. LEXIS 14252, 11-12 (3d Cir. Pa. July 12, 2011), *quoting Berrier v. Simplicity Manufacturing, Inc.*, 563 F.3d 38, 40 (3d Cir. 2009). As a result, to state a claim for strict liability, Plaintiffs must prove both that WKH was a "seller" and that what the WKH sold is a "product." Restatement (Third) of Torts §§ 1-2 (1998).[2] Further, Plaintiffs have the burden of proving that the injury-causing product was defective, that the defect existed at the time the product left WKH's control, and that such defect was the cause of the Plaintiffs' injury.  Restatement (Third) of Torts: Products Liability, § 1; *Martinez v. Skirmish, U.S.A., Inc.*, 2009 U.S. Dist. LEXIS 43837 (E.D. Pa. May 21, 2009).

---

[2] § 1: Liability of Commercial Seller or Distributor for Harm Caused by Defective Products One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.

§ 2: Categories of Product Defect A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product: (a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product; (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe; (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe. Restatement (Third) of Torts §§ 1-2 (1998).

Similarly, New Mexico has adopted the Restatement (Second) of Torts § 402A (1965). *See Stang v. Hertz Corp.*, 83 N.M. 730, 732, 497 P.2d 732, 734 (1972) (attached as Ex. M); *Zufelt v. Isuzu Motors Am., L.L.C.*, 727 F. Supp. 2d 1117, 1129 (D.N.M. 2009).  Under this earlier version of the Restatement, any entity "engaged in the business of selling or otherwise distributing products is strictly liable for distributing a defective product."  *Parker v. St. Vincent Hosp.*, 1996 NMCA 70, 122 N.M. 39, 40, 919 P.2d 1104, 1105 (Ct. App. 1996). "Imposition of strict liability hinges on whether the party in question has any participatory connection, for personal profit or other benefit, with the injury-causing product and with the enterprise that created consumer demand for and reliance upon the product." *Baeza v. Tibbetts*, 2006 U.S. Dist. LEXIS 95317, at *13 (quoting *Kasel v. Remington Arms, Inc.*, 24 Cal. App.3d 711, 725, 101 Cal. Rptr. 314 (1972)). The Plaintiff must show that the defendant promoted, marketed, distributed or had some has had some identifiable role in placing the allegedly defective product on the market. *St. Martin v. Wyeth, Inc.*, Civ. No. 03-0637, 2003 U.S. Dist. LEXIS 26211, *12 (D.N.M. Aug. 14, 2003); *Zufelt v. Isuzu Motors Am., L.L.C.*, 727 F. Supp. 2d 1117, 1130 (D.N.M. 2009).

Here, Plaintiffs cannot meet the requirements of either Pennsylvania or New Mexico law because their allegations revolve around information published by WKH.  Courts across the country have made clear that information is not a "product" for purposes of product liability claims.  *Smith v. Linn*, 563 A.2d 123, 126-27 (Pa. Super  1989) (where information contained in a book is not subject to product liability laws); *Lacoff v. Buena Vista Pub., Inc.* 705 N.Y.S. 2d 183, 188-91, (N.Y. Sup., 2000)(books are not subject to product liability claims because protected by first amendment); *see also Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9th Cir.

1991) (mushroom enthusiasts who relied on erroneous information in encyclopedia of

mushrooms had no strict products liability claim against publisher when they became ill).[3]

Additionally, the Complaint contains no allegation (nor could it) that WKH was a "seller"

of Zoloft within the meaning of the statute.  Rather, Plaintiffs intentionally distort the difference

between Pfizer and WKH in an effort to overcome this defect.  WKH did not and does not

manufacture, sell or market Zoloft.  It does not play a role in its "design, testing, manufacturing

or marketing". (Compl. ¶¶ 44-55.)  Thus, Plaintiffs' claims as to WKH fall outside of the scope

of the Restatement.

### B.      Plaintiffs' Fraud, Misrepresentation and Suppression Claim Is Deficient.

Plaintiffs have failed to plead their claims of fraud and fraudulent concealment with

sufficient particularity as required by Fed. R. Civ. P. 9(b).  Under Fed. R. Civ. P. 9(b), a plaintiff

must plead with particularity the "circumstances" of the alleged fraud "in order to place

defendants on notice of the precise misconduct with which they are charged, and to safeguard

against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Mach. Corp. v.*

*Southmost Mach. Corp*., 742 F.2d 786, 791 (3d Cir. 1984).

"In order to satisfy this exacting standard, a plaintiff must plead (1) a specific false

representation of material fact; (2) knowledge by the person who made it of its falsity; (3)

---

[3]      Decisions in other jurisdictions illustrate this point. In *Jan Way v. Boy Scouts of America*, 856 S.W.2d 230, 238 (Tx. Ct. App. 1993), the plaintiff sought to hold the publisher of the magazine "Boy's Life" liable for an accident in which a young boy sought to emulate a particular shooting technique that was contained in a magazine supplement. Ruling that there could be no products liability against the publisher, the court held that "the ideas, thoughts, words, and information conveyed by the magazine and the shooting sports supplement are not products within the meaning of the Restatement (Second) of Torts." *Id*. at 239. Similarly, in *Herceg v. Hustler Magazine*, 565 F. Supp. 802 (S.D. Tex. 1982), a federal court applying Texas law held that a claim for strict liability against a magazine publisher was without merit. The court explained that "[t]he Court is aware of no court which has held that the content of a magazine or other publication is a product within the meaning of Section 402A of the Second Restatement of Torts. Rather, they have held to the contrary." *Id*. at 803.

ignorance of its falsity by the person to whom it was made; (4) the intention that it should be

acted upon; and (5) that the plaintiff acted upon it to his damage." *Birchall v. Countrywide Home*

*Loans, Inc.,* 2009 U.S. Dist. LEXIS 106813, *23 (E.D. Pa., Nov. 16, 2009) (citing *Shapiro v.*

*UJB Fin. Corp.,* 964 F.2d 272, 284 (3d Cir. 1992)) *See In re Burlington Coat Factory Secs.*

*Litigation*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("Rule 9(b)'s heightened pleading standard gives

defendants notice of the claims against them, provides an increased measure of protection for

their reputations, and reduces the number of frivolous suits brought solely to extract

settlements."); *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 761-62,

750 P.2d 118, 122-23 (1988); *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 108 N.M. 84, 88, 766

P.2d 928, 932 (Ct. App. 1988); *Parker v. E.I. DuPont de Nemours & Co.*, 121 N.M. 120, 132

(N.M. Ct. App. 1995).

Here, Plaintiffs cannot satisfy the requirements of Fed. R. Civ. P. 9(b) because they have

not identified any specific representation in WKH's monograph that was allegedly false.

Moreover, they cannot show that WKH intentionally left any information out of its Zoloft

monograph, let alone offer any motive for such an intentional omission.  Instead, Plaintiffs

simply assume the conclusion and state that WKH "concealed, suppressed or omitted", the side

effects of Zoloft. (*See* Compl. ¶¶ 161-169.)  They provide no details, however, about how, when

or where this allegedly happened.

They also provide no information about how WKH "misrepresented" or "actively

concealed", "suppressed" or "omitted" material information with the intention to induce her to

take the drug, nor how the monograph information affected the decision she made with her

physician.  (*Id.* ¶ 162.)  Such empty pleadings of fraud should be dismissed. *See Youndt v. First*

*Nat. Bank of Port Allegheny*, 868 A.2d 539, 544-45 (Pa. Super. 2005); *Lacoff v. Buena Vista*

19

*Pub., Inc.* 705 N.Y.S. 2d 183, 192, (N.Y. Sup., 2000) ("Moreover, with respect to the fraud cause

of action, plaintiffs provide no factual basis whatsoever for their conclusory allegations that

defendants knew and intended to mislead").

   **C.     Plaintiffs' Breach Of Warranty Claim Is Deficient.**

   The law does not recognize a claim for implied warranty because the very nature of

prescription drugs themselves precludes the imposition of a warranty of fitness for "ordinary

purposes," as each individual for whom they are prescribed is unique and must be examined by a

physician who is aware of the patient's condition as well as her medical history.  *Makripodis v.*

*Merrell-Dow Pharm., Inc.*, 523 A.2d 374, 376-77 (Pa. Super. 1987).

   Plaintiffs fail to plead a claim of breach of express warranty with sufficient specificity to

withstand a motion to dismiss. To state a claim for breach of express warranty a plaintiff must

plead that the seller of the goods made a statement regarding those goods, reliance on behalf of

the consumer, which presumes an awareness of the warranty, and, finally, damages. *See*

*Oppenheimer v. York Int'l Corp.*, No. 4348 Mar. Term 2002, 2002 WL 31409949 (Pa. Com. Pl.,

Oct. 25, 2002) (citing *Price v. Chevrolet Motor Div. of Gen. Motors Corp.*, 2000 Pa. Super. 410,

765 A.2d 800 (Pa. Super. 2000)); 13 Pa. C.S. §2313; Section 55-2-313(1), N.M.S.A.1978 (where

"express" warranties rest on "dickered" aspects of the individual bargain, and go so clearly to the

essence of that bargain that words of disclaimer in a form are repugnant to the basic dickered

terms; "implied" warranties rest so clearly on a common factual situation or set of conditions that

no particular language or action is necessary to evidence them and they will arise in such a

situation unless unmistakably negated); *Perfetti v. McGhan Medical*, 99 N.M. 645, 650 (N.M.

Ct. App. 1983) (Ex. K).

   Plaintiffs' Complaint fails for a number of reasons.

**First**, WKH did not sell any "goods." *Smith v. Linn*, 48 Pa. D. & C. 3d 339, 355 (Pa. Com. Pl. 1988) ("Courts have been unwilling to hold that the contents of a book or a publication is a "good" or a "product" for purpose of U.C.C. warranties[.]").

**Second**, even if WKH's drug information could be considered a "good," Plaintiffs have not identified any statement that could have created a warranty.

**Third,** to the extent Plaintiffs claim that WKH somehow breached an implied warranty of fitness, they must allege that a seller "(1) on whose skill and judgment a buyer relies, and (2) who has reason to know, at the time of contracting, (3) of a particular purpose for which the goods are required, (4) fails to provide goods that perform to the specific use contemplated by the buyer." *Oppenheimer*, 2002 WL 31409949, at *4; *Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d 1174, 1209 (D.N.M. 2008) (Ex. L) .  A particular purpose must be different than the purpose the goods are typically used for.  *Id.*  As in *Oppenheimer*, Plaintiffs have failed to allege a particular purpose and has also failed to allege that WKH was aware of that purpose.

**D.    There Is No Legally Cognizable Claim For "Gross Negligence and Punitive Damages."**

Plaintiffs' claim for "punitive damages" should be dismissed because it is not considered a unique cause of action in Pennsylvania.  Punitive damages are not a cause of action, they are an element of damages arising out of an initial cause of action. *See Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 101, 555 A.2d 800, 802 (1989); *Clay v. Ferrellgas, Inc.*, 118 N.M. 266, 269, 881 P.2d 11, 14 (1994) (attached as Ex. N).  Punitive damages may only be awarded only when the Plaintiffs can establish that the defendant has engaged in "outrageous" or "intentional, reckless or malicious" conduct. *Boring v. Google Inc*., 362 Fed. Appx. 273, 282 (3d Cir. Pa. 2010) (citing *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747-48 (Pa. 1984)).  "A Defendant that is unaware of a product's defect can hardly 'consciously' or 'recklessly' disregard

any other party's rights." *Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d at 1212 (Ex. L).  Here, Plaintiffs have failed to allege any statements, conduct or other evidence to support gross negligence/malice and merely using the word "reckless" by itself does not meet this standard.

      **E.**      **Plaintiffs' Loss of Consortium Claim Fails Because Plaintiffs Cannot Prevail On Their Underlying Claims.**

      Plaintiffs set forth a loss of consortium claim for alleged loss for past and future injuries, damages and losses. (Ex. A ¶¶ 188-190.)  However, it is axiomatic that there is no loss of consortium claim when there is no viable underlying negligence or products liability claim against WKH, as discussed *supra*.

**III.**      **Plaintiffs Fail To Plead Fact Sufficient To State A Cause Of Action**

      **A.**      **Pleading As To WKH And WKUS Is Deficient.**

      Even if Plaintiffs had a cause of action, the Complaint still fails because Plaintiffs omit critical facts from their allegations.  What Plaintiffs do allege is:

- WKH published patient education information for the drug Zoloft;

- Plaintiffs' pharmacies used that information to print a monograph

- April Montoya relied on the monograph to provide a "complete" list of possible side effects when deciding to take Zoloft;

- the monograph was "incomplete" in failing to provide "accurate" warnings about potential risks of birth defects allegedly associated with Zoloft; and

- Veronica Martinez suffered birth defects because her mother did not know of these risks.

What Plaintiffs *do not* allege is:

- what the WKH Zoloft monograph actually said;

- why the monograph was inaccurate or incomplete;

- any information showing about the scope or severity of the  risk of birth defects associated with Zoloft that was not included in the monograph;

- any information about counseling that April Montoya received from her doctor or pharmacist (parties notably absent from this litigation) about potential risks associated with Zoloft;

- any basis for concluding that she could reasonably rely on the generalized summary information in the monograph as a comprehensive source of information about potential side effects associated with Zoloft; or

- any information about the relationship between WKH and Plaintiffs' pharmacies, including the terms of the license agreement between those parties or any alleged warranties that WKH made to Walgreens regarding the content of the monograph.

These are not simply minor pleading omissions – they are crucial to WKH's ability to respond and defend against Plaintiffs' claims.  As such, they are insufficient to satisfy federal pleading standards explained in *Twombley* and *Iqbal*.

Moreover, without these missing facts, Plaintiffs cannot show causation as a matter of law.  The absence of any allegations regarding:  (1) what the monograph said; (2) what role it had in informing April Montoya's decision regarding the risks and benefits of Zoloft; or (3) the impact of anything in the monograph on the information received from her physician, pharmacist or any other source, would force the Court to render an advisory opinion concerning the monograph's purported connection to the Plaintiff Veronica Martinez's injuries.

**B.     Pleading As To WKUS Is Particularly Deficient.**

As set forth above, Plaintiffs cannot state claims against WKUS because they do not and cannot in good faith allege that this entity had any involvement in the conduct allegedly giving rise to their claims. WKH is the ***only*** Wolters Kluwer entity that publishes the patient education monographs (or any other drug information) at issue in this matter.  Yet, through insufficient investigation, or for misguided strategic reasons, Plaintiffs purport to assert entirely meritless claims against WKUS.  WKUS does not have any ownership interest in and is not owned by WKH.   In reality, the "nerve center" referred to by Plaintiffs applies only to WKH.  (Compl. ¶ 9.)

23

Faced with these facts, Plaintiffs lump WKUS in with WKH in an improper attempt to articulate a claim. The suggestion that WKUS can, in an undifferentiated way, be classified as a "PEM Defendant" that was "engaged in the regular business of providing patient drug information, including patient drug education monographs ("PEMs")" is specious. (*See, e.g.*, Compl. ¶ 11.) Plaintiffs make no allegations specific to the involvement of WKUS in their Complaint. As such, these allegations are insufficient to state a claim under federal pleading requirements. *See Silverstein v. Percudani*, 422 F. Supp.2d 468, 473 (M.D. Pa. 2006) ("[a] complaint that 'lumps' together numerous defendants does not provide sufficient notice of which defendants allegedly made the misrepresentations" does not state a claim); *Sershen v. Cholish*, No. 3:07-CV-1011, 2007 U.S. Dist. LEXIS 79627, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.").

## IV.    Plaintiffs' Claims are Barred By The Statute Of Limitations.

Finally, Plaintiffs' claims fail because the allegations show that the claim was brought outside of the applicable limitations period. *See Martinez v. Showa Denko, K.K.*, 125 N.M. 615, 620 (N.M. Ct. App. 1998). (where the Court founds it was incumbent upon Plaintiff to demonstrate that if she had diligently investigated the problem she would have been unable to discover the cause of her injury.); *McDaniel v. Johns-Manville Sales Corp.*, 542 F. Supp. 716, 718-719 (N.D. Ill. 1982) (awarding summary judgment where plaintiffs failed to present facts indicating "that had plaintiffs investigated the problem they would have been unable to discover their potential cause of action against [defendant]"); *Meehan v. Archdiocese of Philadelphia*, 2005 Pa. Super. 91, 870 A.2d 912, 919 (Pa. Super. Ct. 2005) (affirming dismissal of a complaint

as matter of law at the pleading stage because it was filed outside the applicable limitations period).

The applicable statute of limitations to bring a negligence claim in Pennsylvania is two years and three years in New Mexico. 42 Pa.C.S.A. § 5524(2); N.M. Stat. Ann. § 37-1-8 (2011). Plaintiffs attempt to invoke the discovery rule in the Complaint, claiming that their claim could not be discovered within the limitations period, thereby conceding that without it, the claim is barred. (See Ex. "A" ¶ 44.). Where, as here, a complaint shows on its face that a claim would be barred without the benefit of the discovery rule, the burden is on the Plaintiffs to show diligence. *See Meehan*, 870 A.2d at 919 (citing *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (1995)); *Martinez v. Showa Denko, K.K.*, 125 N.M. 615, 620 (N.M. Ct. App. 1998); *Roberts v. Southwest Community Health Servs.*, 114 N.M. 248 (N.M. 1992).

The Complaint fails to identify when Plaintiffs discovered Veronica Martinez's illness or account for the time period between Plaintiff Veronica Martinez's exposure to Zoloft and the purported discovery of her claim. Plaintiffs have provided no allegations about their efforts to investigate their claim. When the Plaintiff experiences physical symptoms that would cause an ordinary person to make an inquiry about the discovery of the cause of the symptoms, that is the point at which the statute of limitations begins to accrue. *Gerke v. Romero*, 148 N.M. 367, 372 (N.M. Ct. App. 2010); *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. App. Houston 1st Dist. 2005). Instead, they include only a conclusory statement that they conducted a reasonable investigation, and that they did not discover the relationship between Plaintiff Veronica Martinez's injuries and alleged life–threatening congenital birth defects until a "date within the applicable statute of limitations for filing Plaintiffs' claims." (See Ex. "A", ¶ 21). Nothing in Plaintiffs' Complaint

suggests that the discovery rule is appropriate in this case, and as such, Plaintiffs' claim is time-barred.

## CONCLUSION

Based on the above discussed law and the Complaint filed herein, Defendants Wolters Kluwer Health, Inc. and Wolters Kluwer United States Inc. request that the Court dismiss the Complaint as against them in its entirety and with prejudice.

Respectfully submitted,

**KENT & MCBRIDE, P.C.**

/s/Ernest Koschineg_____

By:   Ernest Koschineg, Esquire
Carolyn Purwin, Esquire
Attorneys for Defendants Wolters Kluwer Health,
Inc. and Wolters Kluwer United States Inc.
ID No. 83350/208360
Kent & McBride, P.C.
1617 JFK Boulevard, Suite 1200
Philadelphia, PA 19103
(215) 568-1800

**KATTEN MUCHIN ROSENMAN LLP**
/s/Karl Barnickol_____
Karl Barnickol, Esquire
Attorney for Defendant Wolters Kluwer Health, Inc.
and Wolters Kluwer United States Inc.
ID No. 310954
525 W. Monroe Street
Chicago, IL 60661
(312) 902-5271

Dated:  December 30, 2011

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on today's date a true and correct copy of Defendants Wolters

Kluwer Health, Inc. and Wolters Kluwer United States Inc.'s Memorandum of Law in Support of

Their Motion to Dismiss was served upon the following by electronic mail:

Rosemary Pinto, Esquire
Feldman & Pinto, P.C.
1604 Locust St., 2R
Philadelphia, PA 19103

Robert Limbacher, Esquire
Brandon L. Goodman, Esquire
Goodell, Devries, Leech & Dann LLP
One Commerce Square
2005 Market Street, Suite 1940
Philadelphia, PA 19103

**KENT & MCBRIDE, P.C.**

/s/Ernest Koschineg
By:   Ernest Koschineg, Esquire
Carolyn Purwin, Esquire
Attorneys for Defendant Wolters Kluwer
Health, Inc.
ID No. 83350/208360
Kent & McBride, P.C.
1617 JFK Boulevard, Suite 1200
Philadelphia, PA 19103
(215) 568-1800

DATED: December 30, 2011